(No. 14985.—Judgment reversed.)

THE PEOPLE *ex rel.* W. J. Evans *et al.* Appellees, *vs.*
N. COWEN *et al.* Appellants.

*Opinion filed December 19, 1922—Petition withdrawn.*

1. QUO WARRANTO—*when propositions of law need not be submitted.* In a *quo warranto* proceeding which is tried by the court without a jury, propositions of law need not be submitted in order to present for review by the Supreme Court, on a direct appeal, questions which are preserved by exception to the overruling of a motion to dismiss the information and to quash the writ and by exception to the judgment of ouster.

2. SCHOOLS—*when community high school district is sufficiently compact and contiguous.* A community high school district is sufficiently compact and contiguous where it is rectangular in shape and extends but seven and three-fourths miles north and south and five and three-fourths miles east and west, where all the boundaries, with the exception of about four miles, follow section lines, and where the school house is in a village of about 1000 inhabitants, which is within a mile of the geographical center of the district.

3. SAME—*what determines a community center for location of high school.* A community center for the location of a community high school is that place customarily used by most of the people residing in the territory of the district as a center for transacting business and attending church and social functions; and the mere fact that some of the people prefer to transact business elsewhere does not change the community center.

4. WORDS AND PHRASES—*definition of the word "community."* A community may be defined as a body of people having common rights, privileges or interests, or living in the same place under the same laws and regulations, or having an association of interests or a common character or likeness.

DUNN and DUNCAN, JJ., specially concurring.

APPEAL from the Circuit Court of Bond county; the Hon. J. F. GILLHAM, Judge, presiding.

HILL & BULLINGTON, C. E. DAVIDSON, and C. J. LIND-LEY, for appellants.

J. H. ALLIO, State's Attorney, HOGAN & REESE, and J. D. BIGGS, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The People, on the relation of W. J. Evans, R. O. Young and Albert Wade, filed their petition in the circuit court of Bond county asking leave to file an information in the nature of *quo warranto* against the persons named, who are assuming to be the board of education of pretended Community High School District No. 53, in said county. The petition set out reasons why relators claim the district was not legally organized. Leave was granted and an information was filed praying judgment of ouster against the persons who are assuming to exercise the office of members of the board of education. Pleas of justification were filed by the persons made defendants to the information. February 24, 1922, a jury was waived by agreement and the cause was tried before the court, resulting in a judgment of ouster. This appeal is prosecuted from that judgment.

Counsel for the respective parties agree that the questions presented are: (1) Is the territory included in the district compact and contiguous? (2) Does it provide a school reasonably accessible to all the pupils of high school age? (3) Is the territory included in the district, territory which comprises or constitutes a community?

Appellees contend that the cause having been tried by the court without a jury and no propositions of law or fact having been submitted to the court the record brings nothing before this court for review. It was held in *Brad-*

*ish* v. *Yocum,* 130 Ill. 386, that propositions of law or fact are required only in cases which go to the Appellate Court for review and are unnecessary in cases which come from the trial court direct to this court for review, in which cases the question presented is, Did the facts appearing in the record, and the law, authorize the finding and judgment? That was a suit in ejectment. In *Chicago Union Traction Co.* v. *City of Chicago,* 202 Ill. 576, which was a direct appeal from a judgment of the county court confirming a special assessment, propositions of law and fact were presented, but the county court refused to consider or pass upon them, on the theory they were not required except in cases which go for review to the Appellate Court. This court held the action of the county court was erroneous, but said, where the questions sought to be raised by propositions of law are preserved in the record in some other manner for review the error is harmless. (See, also, *Harding* v. *Sucher,* 261 Ill. 284.) At the conclusion of the evidence appellants moved to dismiss the information and quash the writ, which motion the court overruled and appellants excepted. Appellants also excepted to the finding and judgment of the court, and we think the questions for review were as effectually preserved as if they had submitted propositions of law. So far as we know, it has never been the general practice to submit propositions of law in *quo warranto* cases such as this.

The election to organize the district was held in December, 1919, and a majority of the votes were in favor of establishing the district. The district was declared organized and appellants were elected members of the board of education. No question is raised here as to the regularity of the elections. The district embraces thirty full sections and some parts of five or six other sections. The parts of sections together are approximately equal to three sections, so that the entire area of the district is thirty-three sections. The greatest length from the north line

to the south line is seven and three-fourths miles and the greatest distance between the east and west lines is five and three-fourths miles. The school house is in Sorento, a village of about 1000 inhabitants, and is within a mile of the geographical center of the district. The west boundary is not a straight line clear through from south to north, nor are the north and east boundaries straight lines all the way through. The shape of the district is therefore not a perfect rectangle, but it is near enough so that it may be called rectangular in shape. All the boundaries follow section lines except about four miles in the southeast part of the district. The district conforms to the requirements of compact and contiguous. *People* v. *Thompson,* 155 Ill. 451; *People* v. *Crossley,* 261 id. 78; *People* v. *Young,* 301 id. 67; *People* v. *Kirkham,* id. 45; *People* v. *Swift,* 270 id. 532.

Testimony was heard on the question whether the high school was reasonably accessible to pupils in the district of high school age. Seven witnesses testified on behalf of appellants and three on behalf of appellees. A map of the district was introduced in evidence showing its boundary lines, the location of the high school, villages in the near by surrounding territory and roads in the district. All of the territory embraced in the district is in one township in Bond county, except seven sections in the north part of the district are in Montgomery county. Four miles of the west boundary is the line between Bond and Madison counties. Shoal creek is substantially the east boundary, but being a crooked stream and the boundary following straight lines some small parts of the district are on the east side of the creek. It is not clear from the evidence whether anyone lives on the land in the district east of the creek except a Mr. Fink, who lives in the southeasterly part of the district, and his land was included in the district at his request. Possibly two or three persons live on the land in the district which lies east of the creek, in the northeast

part of the district. Prowdly, who was superintendent of the high school, testified there were seventy pupils in attendance the last year and fifty-three or fifty-five the previous year; that the school complied with the course designated by the State University and the State department of education, and was an accredited high school, furnishing a four-year course of study. One of the pupils was the child of relator R. O. Young, who lives approximately two and one-half miles from the school house. Twenty-one pupils attended who lived in the territory in the district outside of Sorento and two from territory outside the district, who live six miles from the school house and in the vicinity of the village of Reno, which is between one and two miles east of the district. All the pupils who attended the school and who lived outside the village were regular in their attendance and were never tardy. Some of the pupils walked who lived outside the village and some rode in automobiles or horse-drawn vehicles. Two of the teachers in the school lived outside the district and drove to the school every morning and back home in the evening. The pupils who attended the school were from fourteen to eighteen years old and about equally divided as to boys and girls. Prowdly testified he had been over the roads in the district, and that up to the time of the trial, February 24, 1922, there had not been a day that year when the roads in the district could not be traveled by automobile. There were no pupils from the east side of Shoal creek except from Fink's family. There were four teachers in the high school and the rooms were crowded. There is a high school in New Douglas having a one-year course. That village is about two miles from the west boundary of the district. The witnesses testified the district was such that a boy could walk to and from the school every day, and that the school was accessible by conveyance from every part of the district all the year round. A majority of the pupils attending from two or three miles walked. The testimony of

appellants supported the contention that Sorento was the community center of the territory embraced in the district; that the people in the district generally did their trading, transacted their business, attended church and other gatherings in Sorento; that the roads made the school in Sorento accessible from all parts of the district and were good roads, convenient for travel all the year. Some of the witnesses had children attending the school and others had long been residents of the district and were acquainted with the people and the roads into Sorento. They testified to the condition of the roads and that they were conveniently passable all the year. That testimony was in some respects contradicted, but by no means overcome, by appellees' testimony. Two of the three witnesses for appellees were relators R. O. Young and Wade. Young had one child attending the high school and one attending the grade school in Sorento. He testified his principal objection was on account of the taxes. Robert Young, also a witness for appellees, testified his only objection to the district was the tax. Relator Young further testified he lived three miles southwest of Sorento, and that he did not know of any pupils in the southwest part of the district, which is the farthest part of the district from the school house, who did not attend school in Sorento. The decided weight of the testimony was that the territory in the district was sufficiently compact and the facilities reasonably sufficient to afford all the children in the district of high school age reasonable opportunity to attend the school and receive a high school education.

The east boundary of the district is the west boundary of the corporate limits of Panama, which lies a mile south of the north boundary of the district. The meaning of the word "community," as used in the statute providing for the establishment of community high school districts, has been before this court in previous cases. "Community" is defined by lexicographers as "a body of people having com-

mon rights, privileges or interests or living in the same place under the same laws and regulations;" "living in a common house or with some apparent association of interests;" "common character;" "likeness." In *People* v. *Kirkham, supra,* after quoting these definitions, the court said, in substance, the territory comprising a community high school district should usually be limited to a community of people with common interests and associations, with a community center, where the people are acquainted and accustomed to gather and intermingle. The court said such communities have no definite or fixed boundaries; that one community merges into another, but there is somewhere a line beyond which the greater portion of the people go toward another community center in an opposite direction. The court said the community boundary and district boundaries of a community high school should, so far as practicable, correspond with the spirit and intent of the law; that the spirit and intent of the law were violated when an attempt was made to incorporate the territory of separate and distinct communities into one community high school district. The district considered in that case contained forty-two square miles, of irregular shape, eight sections of which, in the northerly part, by reason of the hilly formation of the land were not accessible to the school house and the children residing there would receive no benefits from the school. The north boundary line of the district was four miles in length and the greatest length north and south was nine miles. The court did not hold that the district violated the spirit of the law by including in its boundaries parts of different communities, but reversed the judgment and remanded the case for a hearing on the question whether the district was compact and contiguous, so as to make the school building reasonably accessible to all children residing in the district. In *People* v. *Young, supra,* the court said the word "community," in the statute, was not susceptible of exact geographical defi-

nition but in common parlance had a broader significance than the word "neighborhood," and as used in the statute meant territory having a common community center, which might contain several neighborhoods; that where two villages were six miles apart and equally accessible, the natural division of the two communities would be an indefinite line about half way between the villages. It is evident the lines of a community cannot be determined with exact certainty. The line where one community begins and another ends in the establishment of a high school district must be determined approximately from a consideration of the character of the territory, the place most accustomed to be used by the people residing therein as a center at which they gather to transact business, attend church and meet socially, and with reference to the school house of the district being conveniently accessible to all the pupils in the territory of high school age. From the proof it appears the high school in Sorento is reasonably convenient and accessible to the pupils. Some of the witnesses for appellees testified they lived in the southwest part of the district and hauled grain to and transacted business in the village of New Douglas, which was a little nearer than Sorento, but one or more of the witnesses had children who attended the high school or grade school in Sorento. The mere fact that some of the people of the district preferred to transact some of their business in another village could not, of itself, establish that the territory in which they lived was not in the community. By far the greater majority of the people in the district made Sorento the community center, all the children in the district who attended high school attended the school in Sorento, and practically all their parents made that their place of gatherings to transact business, attend church and other meetings. Sorento was the voting place of all the voters living in that part of the district which is in Bond county. None of the neighboring villages conducted an accredited high school giving a

306—22

four-year course, and a few of the pupils attending the school at Sorento came from outside the boundaries of the district.

Much stress is placed by appellees on their contention that the territory embraced in the district does not comprise or constitute a community. It is asserted that half the territory in the district is as close or closer to other community centers than Sorento, where the school house. is located; that parts of the district are separated from the school house and from the community of Sorento by distance, bad roads and streams which mark community lines, and a part of the district touches the corporate limits of another and larger village than Sorento. The village referred to is Panama, in Montgomery county. Panama is a coal mining village, recently established, and has a larger population than Sorento but maintains no high school. It is claimed a part of the district being nearer to Panama than to Sorento, Panama must be the community center for that part of the district. It is true, there is a part of the district in the northeast corner which is much nearer Panama than Sorento, but Shoal creek runs through that part of the district from north to south, leaving most of the territory in the northeast part of the district west of the creek. The proof shows there is no bridge across the creek to enable persons in that part of the territory to reach Panama when the stream is swollen, without going south so far that when they get to a road on which there is a bridge across the creek they are as near Sorento as they are to Panama. From the testimony, as we understand it, it is just as convenient for pupils in the northeast part of the district, on the west side of Shoal creek, to go to school in Sorento as it is to go to Panama. Besides, Panama has no high school, and we cannot say pupils in the northeast part of the district should be deprived of the privilege of a high school education until such time as Panama may establish a high school and take

in the territory now embraced in the district here under consideration.

The judgment is reversed.          *Judgment reversed.*

DUNN and DUNCAN, JJ., concurring:

We concur in the judgment in this case but regard the discussion of the size and shape of the district, the roads, creeks and methods of travel, the accessibility of the school house and the location of the community centers as entirely foreign to the case, for the reason that questions as to these matters are legislative in their character and not judicial. The power to provide for the organization of school districts belongs to the legislature, and the questions under what circumstances, when, how and out of what territory a school district shall be organized are legislative questions. (*Kenyon* v. *Moore,* 287 Ill. 233; *Jackson* v. *Blair,* 298 id. 605.) The legislature having prescribed only the conditions of contiguous territory and a majority vote at an election called for the purpose by the county superintendent of schools in favor of the organization of territory into a community high school district, its determination is conclusive. Being a legislative question it is not within the province of a court to consider it. Whether wise or unwise, just or unjust, reasonable or unreasonable, the court will not consider it, because the question is legislative and not within the judicial power. The courts have no more power to require the existence of some other condition, as good roads or such size and shape as the court deems convenient, than it has to adjudicate an organization to be valid without a compliance with the conditions required by the statute. Since the statute makes no requirement in regard to the conditions discussed in the opinion the court cannot do so, and to discuss it is an apparent assumption of a right to regulate legislative action, which the courts do not possess.