(No. 15161.—Reversed and remanded.)

THE PEOPLE *ex rel.* Robert Shake *et al.* Appellants, *vs.*
O. P. SIMPSON *et al.* Appellees.

*Opinion filed June 20, 1923.*

1. SCHOOLS—*meaning of the terms "contiguous" and "contiguous and compact."* The terms "contiguous" and "contiguous and compact," with reference to the formation of a school district, mean territory so closely united and so nearly adjacent to the school building that all the children residing in the district, their ages considered, may in a reasonable time and with a reasonable degree of comfort travel from their homes to the school building and return.

2. SAME—*when community high school district is not contiguous and compact.* A community high school district is not contiguous and compact, within the meaning of the School law or the validating act of 1921, where the school building is not near the geographical center of the territory and is not accessible to all pupils of the district because some of the territory is cut off by streams which are subject to overflow. (*People* v. *Cowen,* 306 Ill. 330, distinguished.)

DUNN, DUNCAN and THOMPSON, JJ., dissenting.

APPEAL from the Circuit Court of Christian county; the Hon. THOMAS M. JETT, Judge, presiding.

EDWARD E. DOWELL, State's Attorney, and HOGAN & REESE, for appellants.

TURNER, HOLDER & BULLINGTON, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

By leave of court the State's attorney of Christian county filed an information on the relation of residents and tax-payers in the territory claimed to constitute Community High School District No. 307, requiring the appellees to show by what authority they assumed to exercise the rights and privileges of a school district. The plea of the appellees set forth the filing of a petition for the creation of the district, an election held at which the proposition was carried, and an election for a board of education at which they were

elected. A replication was filed setting forth that the district was not compact and contiguous, did not serve a community but included territory belonging to other communities, and the district was disproportionate, irregular and otherwise illegal and void. The issues were submitted to the court, and the writ was quashed and the suit dismissed at the cost of the relators.

No claim seems to have been made that there was any defect in the proceedings for the organization of the district which had not been legalized and made valid by subsequent act of the legislature, but the cause was submitted on the question of fact whether the territory of the district was compact and contiguous and whether it constituted a community within the meaning of the law authorizing the establishment of community high school districts. A plat of the territory of the district and the territory adjacent to it is in evidence and shows that the territory is composed of ten common school districts, eight of them in Ricks township, one in King township and one in Bear Creek township. No school house has been built nor bonds issued nor site selected, but a school is conducted in part of the school building in the village of Morrisonville, near the extreme northwest corner of Ricks township, within one-half mile of the north and west lines of the township. The village of Morrisonville lies between Prairie creek and Bear creek, which are subject to overflow several weeks of the year, and most of the students from outside of the Morrisonville district are often compelled to board in Morrisonville so as to be able to attend school continuously. Some of the students boarded in Morrisonville the entire school year, either on account of the distance or on account of bad roads. Cornering on Ricks township at the northwest corner is school district No. 203 in King township, extending west three miles and two miles north. North of the west half of Ricks township is school district No. 174 in Bear Creek township, extending north three miles, and the east

line of that district is within one-half mile of the village of Palmer, a community center.

There is evidence showing that the children who were attempting to attend this high school could not cross the creeks on all days of the school year, and there is testimony of a rural mail carrier that on account of the high water he could not cross one of the creeks for two days in one spring and could not make a complete trip on several days of that year. The evidence shows quite conclusively that these two creeks overflowed several hundred feet across the road at several seasons of the year, so that it was impracticable for school children to pass along the road on foot, and often difficult, if not dangerous, to pass over the road in a vehicle.

A petition for rehearing was filed and allowed in this case, in which petition it is alleged that the original holding in this case was not in accordance with the facts, or the law as stated by this court in *People* v. *Cowen*, 306 Ill. 330. It is essential, therefore, that that case be briefly referred to.

The record disclosed in the *Cowen case* that the school house was within a mile of the geographical center of the district, while in the case at bar the school house in the village of Morrisonville is within less than half a mile of the west boundary line and four miles and a half of the east boundary line, and in other respects is far from being in the center of the district. In the *Cowen case* seven witnesses were presented to sustain the validity of the district, and all testified as to the accessibility of the school building by the roads which had to be passed over in going to the school. Only three witnesses testified that the district was not compact and contiguous. Two of these witnesses objected because they thought the school taxes were too high, and there was nothing in the testimony of any of them to indicate that the roads were impassable. Indeed, the opinion in that case says (p. 335) "that the roads made the

school * * * accessible from all parts of the district and were good roads, convenient for travel all the year." As already stated in this opinion, the facts as to the accessibility of the school house by the roads in this case are entirely different from those in *People* v. *Cowen, supra.*

Much stress is laid in the argument of counsel for appellees in this case that under the decisions of this court the district was compact and contiguous. In the recent case of *People* v. *Drennan,* 307 Ill. 482, this court on page 491 held, in substance, that the terms "contiguous" and "contiguous and compact," with reference to the formation of a school district, mean "territory so closely united and so nearly adjacent to the school building that all the children residing in the district, their ages considered, may conveniently travel from their homes to the school building and return in a reasonable time and with a reasonable degree of comfort." This definition as to the meaning of the terms "compact" and "compact and contiguous" is the last announcement of this court and is not out of harmony with any holding of this court in any other case.

It is manifest from the facts shown in the record that this territory is not composed of compact and contiguous territory within the above definition, and that the school building, on this record, would not be accessible to all pupils within the district living outside of Ricks township. For that reason the judgment of the circuit court is reversed and the cause remanded.        *Reversed and remanded.*

Mr. JUSTICE THOMPSON, dissenting:

This judgment should, I respectfully submit, be affirmed.

In *People* v. *Young,* 301 Ill. 67, the court said: "There is no constitutional limitation on the authority of the legislature to establish school districts and to establish and alter the boundaries of said districts except the mandate of the constitution which requires the legislature to provide a thorough and efficient system of free schools, so that all children

of the State may receive a good common school education."
And again: "It cannot be said that a system which places
the school house at a point so remote that the children of
school age cannot reach it conveniently is either thorough
or efficient. In order to make a school system thorough and
efficient the territory of the State must be divided into dis-
tricts sufficiently compact to enable the children to travel
from their respective homes to the school building in a rea-
sonable length of time and with a reasonable degree of com-
fort." I am confident this is a proper measure of efficiency
to be applied to our public school system, but I am now
convinced that the legislature is the sole judge of what con-
stitutes thoroughness and efficiency in the system of free
schools established by it. It is not the province of the courts
to consider or determine this question. The district in ques-
tion came within the terms and provisions of the validating
act approved May 10, 1921, and was thereby created into a
school district by the direct action of the legislature. (*Peo-
ple* v. *Opie,* 301 Ill. 11.) Since the district meets the re-
quirements of the validating act it was legalized regardless
of every other question. *Zeigler* v. *Douglas,* 283 Ill. 407.

Section 1 of article 8 of the constitution, which provides
that "the General Assembly shall provide a thorough and
efficient system of free schools, whereby all children of this
State may receive a good common school education," is not
a grant of power to the legislature but it is a mandate to
it to do what it had the power to do and is a limitation on
the exercise of this power. (*Russell* v. *High School Board,*
212 Ill. 327; *People* v. *Moore,* 240 id. 408.) This court
has held that it is no part of the duty of the courts to de-
clare what particular branches of study shall constitute a
common school education but that it is for the legislature
to determine that question. (*Richards* v. *Raymond,* 92 Ill.
612; *Powell* v. *Board of Education,* 97 id. 375.) It has
been held repeatedly that there is no limitation on the legis-
lature with respect to the agencies it shall adopt to provide

the "thorough and efficient system of free schools." The legislature may exercise its discretion without supervision by the courts and prescribe such mode for the formation of school districts as it shall consider most conducive to the public interest. (*Speight* v. *People,* 87 Ill. 595; *Plummer* v. *Yost,* 144 id. 68; *People* v. *Chicago and Illinois Midland Railway Co.* 256 id. 488; *People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 288 id. 70.) The duty rests upon the legislature to provide for the maintenance of the common school system, which includes high schools. How this is to be done is a matter which rests in the discretion and wisdom of the legislature, subject to the requirements of the constitution regarding uniformity and against discrimination. (*People* v. *Chicago and Northwestern Railway Co.* 286 Ill. 384.) While this court by the broad language used in *People* v. *Young, supra,* (and in *People* v. *Kirkham,* 301 Ill. 45, decided at the same term,) indicated that it had authority to invade this field, this court has not heretofore dissolved a district on the ground that it was too large to be a part of a thorough and efficient system of free schools. Indeed, this court said in *People* v. *Swift,* 270 Ill. 532: "No limitation has been placed by the legislature upon the amount of territory that may be included in the school district. We have no authority to impose any limitation upon its size." Courts have authority to interfere with the organization of school districts only when the action of agencies authorized by the legislature to create districts is clearly shown to be so unreasonable and unjust to those complaining as to amount to oppression and a wanton disregard of their rights and interests. *Fisher* v. *Birkey,* 299 Ill. 145.

The constitutional provision is clearly a mandate to the legislature to establish a thorough and efficient system of free schools whereby all the children of the State may secure a good common school education, and so the legislature has no discretion as to whether it will perform this

constitutional duty; but that does not give this court the power to compel the legislature to perform its duty, however peremptorily the performance of the duty may be enjoined by the constitution, nor does it give this court power to supervise the manner of the performance of the duty when the legislature chooses to act. This court is not at liberty to go outside of the constitution, nor, keeping within its bounds, to trespass upon the legislative field and set up some standard of its own based upon what might be deemed the inalienable rights of men, or the fundamental principles of right and justice, or some spirit or principle supposed to underlie the constitution by which to measure the validity of acts of the legislature in carrying out this mandate. There are many constitutional duties imposed upon other departments of the government which cannot be enforced by the courts, and the manner of fulfilling these duties is left to the sole and final determination of the department upon which the duty is imposed. Section 6 of article 4 of the constitution requires that the General Assembly every ten years shall apportion the State into fifty-one senatorial districts, said districts to be formed of contiguous and compact territory bounded by county lines, with one exception, and to contain as nearly as practicable an equal number of inhabitants, and this court held in an exhaustive opinion, considering and citing many authorities, that it was for the legislature to determine when and in what manner it would carry out this mandate, and that courts could not compel the legislature to act nor could they supervise the action of the legislature when it chose to act. (*People* v. *Thompson,* 155 Ill. 451.) Section 22 of article 4 provides that in all cases "where a general law can be made applicable, no special law shall be enacted," and this court has held that it is for the legislature to decide "where a general law can be made applicable," and that the courts can not review its decision. (*Owners of Lands* v. *People,* 113 Ill. 296.) Section 29 of article 4 makes it the duty of the

General Assembly "to pass such laws as may be necessary for the protection of operative miners," and this court held in *Chicago, Wilmington and Vermilion Coal Co.* v. *People,* 181 Ill. 270, that the legislature must use its own judgment in determining what legislation is necessary to fulfill this duty imposed upon it by the constitution. Section 12 of article 5 provides that "the Governor shall have power to remove any officer whom he may appoint, in case of incompetency, neglect of duty, or malfeasance in office," and it has been held that the Governor may determine himself whether the cause of removal exists, in any manner he sees fit, and that it is not for the courts to dictate to him in what manner he shall proceed in the performance of his duty nor to revise or supervise his decision after he has acted. *Wilcox* v. *People,* 90 Ill. 186.

The limitations placed in section 1 of article 8 of the constitution circumscribe the legislative discretion with respect to the establishment of a system of free schools but they do not take the discretion away altogether. It must be assumed that the legislative department of the State government, composed, as it is, of the immediate representatives of the people, acts from patriotic motives, and it would be violative of the fundamental principles of a republican form of government to authorize the courts to inquire into the motives which move the legislature. If the validating act which created this district is within the bounds fixed by the constitution, though it results in inequality and injustice, it is valid, for the courts have no power to revise or annul an act of the legislature which is the mere exercise of its discretionary powers or which rests in the legislative judgment. Just where the dividing line is to be drawn between judicial and legislative power with respect to certain subjects often presents questions about which enlightened courts and eminent jurists widely differ. After more mature deliberation and a fuller view of the subject gained by the consideration of the many school cases now coming to this court,

I am convinced the court was in error in assuming, as it did in *People* v. *Young, supra,* that the courts had the authority to supervise the acts of the legislature in carrying out the constitutional mandate with respect to free schools, and it seems clear to me that the legislature has all the power of the people over the apportionment of the State into school districts not denied to it by the constitution. As the court said˙ in *Cook* v. *Board of Directors,* 266 Ill. 164: "It is impracticable to maintain a high school in every school district, but it is not impossible to give each child of the State that has finished the eighth grade work the benefit of a high school education." All territory in each county not included in a district maintaining a recognized four-year high school has been declared by the legislature to be organized into a non-high-school district, and this court has held these non-high-school districts to be valid organizations. (*People* v. *Chicago and Northwestern Railway Co. supra.*) In such districts there is no school house, and a child living in such a district may be compelled to go many miles to get to a high school. The courts cannot make school districts, and when a district created by the legislature is destroyed by the courts, the courts to that degree reduce the thoroughness and efficiency of the system of free schools and make it that much more difficult for some of the children of the State to obtain a good common school education. If the school system provided by the legislature is not a satisfactory system, the redress of the betrayed constituent is in his own hands, to be sought at the polls and not in the courts.

Briefs filed in some of the school cases now under advisement contain arguments to the effect that the courts should take jurisdiction and place "some curb on the riot of statutory enactment of school laws" which "energetic and over-zealous schoolmen of the State have succeeded in obtaining from the legislature," and also that "taxes on farm lands in many neighborhoods in this State (chiefly because of excessive school taxes) now average more than what was

considered a fair rental value for the land not many years ago." Such arguments might well be addressed to the legislative department of the government, but it has never been held that the courts could supervise the propriety, wisdom, justice or expediencey of legislation. Constitutionality of legislative acts is to be determined solely by reference to the limits imposed by the constitution. The only question for the courts to decide is of power,—not of expediency, wisdom or justice. The courts are not the guardians of the rights of the people against oppressive legislation which does not violate the provisions of the constitution. There is no constitutional limitation placed on the right of the legislature to fix such rates of taxation for school purposes as it may see fit. (*People* v. *Chicago and Illinois Midland Railway Co. supra.*) The protection against burdensome laws is by an appeal to the patriotism and sense of justice of the legislative representatives, and if the over-burdened tax-payers' cry of distress is not heeded by their representatives, then the appeal must be made to the people themselves and the remedy is at the polls.

Furthermore, this district is, in fact, compact, as that term is used in describing high school districts. While it is irregular in shape, it is but nine miles between its extreme east and west points and its extreme north and south lines. It comprises a fraction less than forty-seven sections of land. The village of Morrisonville, where the high school is conducted, is four miles from the north and the west boundaries and five miles from the east and the south boundaries. The greatest distance to be traveled from the most remote corner of the district is seven and one-half miles, and no one lives in that corner. The roads in the district are ordinary country roads and many of them are oiled. Many districts larger than the one here involved have been sustained by this court. See *People* v. *Patterson,* 305 Ill. 541.

DUNN and DUNCAN, JJ., also dissenting.