# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

(No. 14166.—Reversed and remanded.)

THE PEOPLE *ex rel.* John A. Morris *et al.* Appellees, *vs.*
FREMONT OPIE *et al.* Appellants.

*Opinion filed December 22, 1921.*

1. SCHOOLS—*the legislature has power to create school districts without an election.* There is no constitutional provision requiring a petition or a vote of the people to establish a school district, and the legislature may therefore establish school districts without any petition and even without a vote on the question.

2. SAME—*when validating act applies to establish community high school district.* If an election has been called by the county superintendent of schools for the purpose of voting on the organization of certain territory into a community high school district and a majority of the inhabitants voting vote for the proposition and choose a board of education at a subsequent election similarly called, the territory in which the elections are held constitutes a valid community high school district under the validating act of May 10, 1921, (Laws of 1921, p. 797,) and the irregularities and defects in the proceedings are immaterial.

3. CONSTITUTIONAL LAW—*high school validating act of 1921 is not a local or special law pertaining to conduct of elections.* The act of May 10, 1921, (Laws of 1921, p. 797,) validating the organi-

zation of certain community high school districts, is not a local or special law pertaining to the conduct of elections, as the effect of the act is merely to create the territory in which an election has been held into a valid school district.

4. SAME—*constitution does not prohibit local or special laws for establishing school districts.* Section 22 of article 4 of the constitution, relating to special legislation, does not prohibit the passage of local or special laws for the establishment of school districts.

CARTWRIGHT, CARTER and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Peoria county; the Hon. C. V. MILES, Judge, presiding.

CAMERON & ANDERSON, for appellants.

ERNEST J. GALBRAITH, State's Attorney, and DAILEY, MILLER, McCORMICK & RADLEY, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is from a judgment of ouster rendered in *quo warranto* against appellants April 29, 1921. The information filed charged appellants with usurping the office of members of the board of education of Community High School District No. 201, in Peoria county. Appellants filed a plea of justification, to which a demurrer was sustained, and appellants elected to stand by their plea.

Appellees contended that the plea was bad for the following reasons: (1) The petition to the county superintendent of schools was not signed by fifty legal voters, as required by section 89*a* of the School law, but was signed by thirty-nine men and fourteen women; (2) the ten notices posted were not posted in ten of the most public places throughout the territory; (3) the ballot was not in the form prescribed by section 89*a* of the School law; and (4) women were allowed to vote at the election and their votes were not kept separate from the votes of the men.

Shortly after the judgment of ouster was rendered the General Assembly passed an act to validate the organization of certain community high school districts. This act became a law May 10, 1921. (Laws of 1921, p. 797.) In the brief filed by appellees in this case it is said: "On the record as it now stands it must be admitted that by the plain provisions of sections 1 and 2 of the validating act the fact of women voting at the election and the irregularities in the form of the ballot and the posting of the notices are cured. We will therefore devote no time to the discussion of these points."

Appellees contend that the petition to the county superintendent of schools being signed by thirty-nine men and fourteen women at a time when women were not legal voters was not a sufficient compliance with the provisions of the statute requiring the petition to be signed by fifty legal voters to give the county superintendent of schools jurisdiction to call and hold the election. For this reason appellees argue that the validating act does not apply. This court has repeatedly held that there is no constitutional provision requiring a petition or a vote of the people to establish a school district, and that the legislature may therefore establish school districts without any petition, and even without a vote on the question. There being no constitutional prohibition, the legislature may validate by law that which it might have authorized in advance. Since it might have authorized the organization of this territory into a district without a petition and without an election, it may validate the organization without a petition. The validating act does not require a petition, but provides "that in all cases where a majority of the inhabitants of any contiguous territory, voting on the proposition, have voted at an election called for the purpose by the county superintendent of schools, in favor of the organization of such territory into a community high school district, and where, at a subsequent election similarly called and held, a board of edu-

cation has been chosen for such district, such territory is hereby declared legally and validly organized and established as a high school district, and a valid and existing school district and body politic and corporate of this State for the purpose of establishing and maintaining a high school." Under this validating act, if there has been an election called by the county superintendent of schools for the purpose of voting on the organization of certain territory into a community high school district at which a majority of the inhabitants who voted voted in favor of the proposition, and a subsequent election similarly called at which a board of education has been chosen, the territory constitutes a valid high school district. (*People* v. *Madison,* 280 Ill. 96; *Fisher* v. *Fay,* 288 id. 11.) We have held that where the law under which the attempted organization of school districts was effected is unconstitutional the district may be validated by an act of the legislature declaring the territory so attempted to be organized a valid district. In such cases the county superintendent of schools had no authority to call the election to organize the district and all steps taken by him under the unconstitutional law were void. The purpose of mentioning in the validating act that an election has been called and held is to describe the territory which the legislature declares to be a school district. The irregularities and defects in the proceedings are immaterial, for the reason that the legislature might have dispensed with the preliminary steps in the first instance. *People* v. *Roberts,* 284 Ill. 519; *People* v. *Taylor,* 281 id. 355; *People* v. *Fifer,* 280 id. 506.

On the oral argument appellees suggest that the validating act under consideration violates section 22 of article 4 of the constitution, in that it is a local or special law pertaining to the conducting of elections. The act does not in terms purport to validate any election. It merely creates the territory in which an election was held into a valid school district. The legislature had a right, as we have

noted above, to do this without any election. Similar validating acts of 1917 and 1919 were substantially in the form of the act now under consideration, but the 1917 and 1919 acts in terms purported to validate the elections, and we have repeatedly held those acts constitutional. (*People* v. *Edwards*, 290 Ill. 464.) In many of the cases cited above, validating acts were questioned on the ground that they violated section 22 of article 4 of the constitution, which prohibits the passage of a local or special law in certain enumerated cases. It was argued that these acts came under several of the different provisions enumerated in section 22 of article 4, but whether they come under one or the other provision is immaterial, as the question is, Are they local or special laws? This court has many times held that such validating acts are not local or special laws. If they were, there is no constitutional prohibition against *the establishment* of school districts by local or special laws. *People* v. *Long*, 297 Ill. 194; *People* v. *Madison, supra; People* v. *Woodruff*, 280 Ill. 472; *People* v. *Stitt*, 280 id. 553; *People* v. *Craft*, 282 id. 483.

In view of the present state of the law the judgment must be reversed. The cause is remanded to the circuit court of Peoria county for further proceedings consistent with the views herein expressed.

*Reversed and remanded.*

CARTWRIGHT, CARTER and DUNN, JJ., dissenting:

We dissent from the foregoing opinion so far as it holds that Community High School District No. 201 was created and brought into existence by the act of May 10, 1921, and that the General Assembly had power, under the constitution, to validate by a special and local law an election or elections not held, opened or conducted in accordance with the provisions of the general law. The act in question provides: "That in all cases where a majority of the inhabitants of any contiguous territory, voting on the propo-

sition, have voted at an election called for the purpose by the county superintendent of schools, in favor of the organization of such territory into a community high school district, and where, at a subsequent election similarly called and held, a board of education has been chosen for such district, such territory is hereby declared legally and validly organized and established as a high school district, and a valid and existing school district and body politic and corporate of this State for the purpose of establishing and maintaining a high school. The board of education acting for such district is hereby declared to be the duly constituted authority thereof." Section 2 is as follows: "No irregularity, defect or omission whatsoever, in the time or manner of calling, holding or conducting any such elections or in the notice thereof, ballots used therein, or returns thereof, shall be held to invalidate any such elections." Section 3 provides that all acts and proceedings theretofore done, had or performed by each such district, and the persons from time to time elected and acting as the board of education thereof, shall be legal and valid in all respects. Section 4 provides that taxes levied by the board of education of any such district shall be legal and valid. This was not the creation of a school district in certain territory in which the elections had been held, but was an attempt to validate the elections and to declare the territory legally and validly organized by virtue thereof. This is not only clear from the provisions of section 1 above quoted, but also by the declaration of section 2 that no irregularity, defect or omission in the manner of calling, holding or conducting any such elections should be held to invalidate the same.

There is no express prohibition against the creation of school districts by a legislative act without a petition or election, but it may be by the exercise of the legislative judgment that certain territory shall be created as a school district. The General Assembly formerly exercised its power by creating school districts by special acts, and cura-

tive acts have been held valid which have not come within
any express prohibition but have been considered within the
legislative power to enact local and special laws for a des-
ignated purpose.  The language of this act shows that the
General Assembly did not exercise or attempt to exercise,
or have any intention of exercising, its legislative authority
to declare this territory a school district, but only intended
to validate the election and declare the district organized
by virtue of it.  Not only is that true, but there is a further
reason for holding that the General Assembly did not intend
to create a district by the passage of the act and that such
was not its effect, as to which there is no conceivable reply.
If the purpose or effect of the act was to create a school
district in the specified territory it could have no previous
existence but would come into being and become a district
at the passage and approval of the act.  But the act declares
the district legally and validly organized and established as
a high school district, the board of education acting for
the district to be the duly constituted authority thereof, all
acts and proceedings theretofore done, had or performed
by the district to be legal and valid, and taxes levied by the
board of education to be also legal and valid.  Both the lan-
guage of the act and its necessary effect make it beyond all
question or dispute that there was no intention to create a
district by the exercise of legislative judgment but only to
validate elections and declare the district legally organized
by virtue of them.  The court has never assumed a position
to the contrary, which would be utterly indefensible.

The act was curative and retrospective, and the law is
that if there is no constitutional prohibition the General
Assembly may by such an act make legal anything which
it could have authorized in advance.  The test in all cases,
by all authorities, is whether the General Assembly might
have authorized the act which it attempts to validate be-
fore it took place.  (*People* v. *Fifer,* 280 Ill. 506;  Cooley's
Const. Lim. 381;  8 Cyc. 1083;  26 Am. & Eng. Ency. of

Law,—2d ed.—609.) The General Assembly may validate by curative act any proceeding which it might have authorized before it was instituted but cannot by retrospective legislation confirm what it could not originally have authorized. The curative acts legalizing the organization of school districts that have been held valid have been in each case where there was no constitutional prohibition against the enactment of the law originally or when enacted. Inasmuch as there is no express prohibition against the creation of school districts by a legislative act without a petition or election but by the exercise of the legislative judgment that certain territory shall be created as a school district, whenever the General Assembly exercised its power by creating school districts by special acts they were recognized as valid and that the legislative power extends to the enactment of local and special laws for that purpose. The prohibition of section 22 of article 4 of the constitution against the enactment of special or local laws when a general law can be made applicable is addressed to the General Assembly. (*Owners of Lands* v. *People,* 113 Ill. 296; *Knopf* v. *People,* 185 id. 20; *Sanitary District* v. *Ray,* 199 id. 63; *City of Mt. Vernon* v. *Evens & Howard Fire Brick Co.* 204 id. 32.) There being no express prohibition in section 22 of article 4 against the creation of school districts by a legislative act wherever the General Assembly might by special act have authorized in advance the creation of a school district without a petition or election, it could validate such an organization after it had been attempted.

At the time of the election for the organization of the school district in question there was a general law regulating the manner of opening and conducting elections for the organization of community high school districts known as the Australian ballot system, and elections were required to be held in accordance with the provisions of that general law. Compliance with its provisions was an essential requirement to a valid election, and if an election was not

held in accordance with that general law no district was organized. (*People* v. *Williams,* 298 Ill. 86; *Irwin* v. *Shepherd,* id. 100; *People* v. *Exton,* id. 119.) Section 22 of article 4 of the constitution prohibits the General Assembly from passing local or special laws in any of the cases enumerated therein, among which are laws providing for the opening and conducting of any election or designating the place of voting. If the act now in question was local or special and purported to validate an election not opened and conducted in accordance with the provisions of the general law it came within the express prohibition of the constitution and was void,—and this question has never been before the court in any case. There have been cases where it was alleged that a curative act violated other constitutional provisions, and some where it was alleged that a curative act violated section 22 of article 4, and it was held that the act was not subject to the objection. The section contains many subjects of legislation, and this one has not been involved in any previous case. In *People* v. *Madison,* 280 Ill. 96, the objection was that the act then considered was a special law because no district could be organized in the future under its terms, but it was held that such legislation dealt only with the past and was not subject to the objection that it was a special law because it applied only to existing conditions. That was correct, because a general law does not become local or special from the fact that its operation is temporary or for a limited time. (*People* v. *Wright,* 70 Ill. 388.) In *People* v. *Long,* 297 Ill. 194, it was contended, not that the curative act violated section 22 of article 4, but that section 89a of the original act contravened that provision of the constitution. That section did not provide a special method of conducting an election or have the slightest relation to it, and the proposition was not the one now presented. In *People* v. *Craft,* 282 Ill. 483, it was contended that the curative act violated the constitutional prohibition in section 22 of article 4

against the enactment of local or special laws granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever. It was held that the curative act did not grant any special or exclusive privilege, immunity or franchise and therefore did not come within the constitutional prohibition. A retrospective act of a curative nature may violate constitutional rights although not within any provision of section 22 of article 4, and in the case of *Marsh* v. *Chesnut,* 14 Ill. 223, where acts purporting to render valid assessments were under consideration, it was said that it was indeed a serious question whether the legislature possessed the constitutional power to enact laws of that character. The validity of the acts, however, was considered on other grounds, and it was held that they were void because they deprived the tax-payer of an opportunity to have a hearing and appeal from an assessment. None of the cases have involved the question whether the General Assembly may by a special retrospective and curative act validate an election not opened or conducted as required by the general law.

While the General Assembly may determine for itself whether a general law can be made applicable to a particular situation and in the exercise of legislative judgment may enact a special law relating thereto, the constitution establishes a hard and fast rule as to the particular kinds of laws enumerated in section 22 of article 4 binding the General Assembly and prohibiting their enactment under any circumstances. There is no room for the exercise of legislative judgment or discretion and no local or special law can be passed for the opening and conducting of any election. If this law is local or special it comes within the prohibition of the constitution so far as validating any election not opened or conducted in accordance with the general law, and is void. The question whether curative acts validating the organization of school districts are local or special has been involved in all the cases which have been considered

by the court, and in every instance the acts have been regarded, without question, as local or special and sustained because there was no prohibition of the constitution against their enactment. It was held in every case that there was no constitutional prohibition against the enactment of local or special laws of the character of the act involved. So far as the record in this case shows, this district is the only one affected by this particular curative act, but if there were a number there would be no greater power to authorize an election to be conducted in a different manner from that provided by the general law. There could be but one general law controlling the method of opening and conducting elections, and that was the general law applying to all the localities in the State similarly situated providing for the organization of districts when the election in this case was held. While the General Assembly might have created school districts by a legislative act, it had provided by general law for their creation by the people directly interested by means of elections, and in these extended districts had provided that the election should be held under the safeguards of the Australian ballot system, designed for the protection of the voter and to promote the secrecy of the ballot. If the General Assembly had before the election in this territory provided that an election therein might be held dispensing with the safeguards of the Ballot law in respect to opening and conducting the election, and the district should be legally organized thereby, it would clearly have been a local or special law prohibited by the constitution. The validating act by its terms is general and applies to all cases where an election has been held for the organization of a community high school district. But that may be said of practically every local and special act. That was the form of the acts held void in *Devine* v. *Commissioners of Cook County*, 84 Ill. 590, and *Pettibone* v. *West Chicago Park Comrs.* 215 id. 304. Any special law can be so framed as by its terms to be of general application, but

the court will look to its substance and practical operation rather than to its title, form or phraseology, because otherwise prohibition of the fundamental law against special legislation would be nugatory.  (25 R. C. L. 815.)

While an act is not local or special because it is retrospective in operation, the court has never held that such an act is not local or special because it is curative in its nature or relates to a past event.  It cannot be said that the court could determine the character of an act by the time when it was passed, and the supposed curative act is null and void as applied to an election not held and conducted as required by the general law.

It may be true that the appellants were acting as a board of education and were conducting a school and incurring obligations which would produce unfortunate results.  If that is so, the condition has been created by their unlawful acts in violation of public law which they must be presumed to have known and understood.  However much such a situation is to be regretted, the question presented is whether the law and the constitution shall be overturned and set aside because of conditions created in disregard of their limitations.  There are worse conditions than not having a community high school and being compelled to obtain such education as the district schools afford.  In a constitutional government no calamity can befall the State or the community as great as the destruction of constitutional safeguards framed with deliberation by representatives of the people and adopted as the fundamental law.  The fact that the appellants have acted under a void election which did not create any district and have been conducting a school and creating obligations is not of such overwhelming importance as to justify the overthrow of the constitution and the nullification of its provisions.