(No. 15230.—Reversed and remanded.)

THE PEOPLE *ex rel.* Ralph Leighty, Appellant, *vs.* MARION
YOUNG *et al.* Appellees.

*Opinion filed June 20, 1923.*

1. APPEALS AND ERRORS—*questions decided on a former appeal
cannot be reconsidered.*  Where a cause has been brought to the
Supreme Court and considered and a rehearing has been denied,
the judgment of the court is conclusive as to all points and ques-
tions presented and decided, and if the same cause is again brought
before the court for review such questions cannot be reconsidered
and are not open for discussion.

2. SCHOOLS—*what is to be considered in determining whether
territory of community high school district is of proper propor-
tions.*  In determining whether territory organized as a community
high school district comes within the constitutional requirement
that it shall afford to all the children of the district a reasonable
opportunity to receive a good common school education, such re-
quirement, and the meaning of the terms "community," "compact"
and "contiguous" when applied to school districts, are all to be
considered.

3. SAME—*omission of word "compact" from community high
school curative act of 1921 has no effect.*  The omission of the
word "compact" from the community high school curative act of
1921 is of no consequence in view of the constitutional requirement
that the legislature shall adopt such a system of free schools that
all the children may receive a good common school education, and
the fact that the legislature may or may not have fixed limitations
in reference to compactness or contiguity, or both, does not per-
mit the courts to ignore the constitutional requirement in *quo war-
ranto* proceedings.  (*People* v. *Young,* 301 Ill. 67, followed.)

4. SAME—*constitutional provision for a thorough and efficient
system of free schools is a mandate to the legislature.*  The provi-
sion of the constitution that the legislature shall provide a thorough
and efficient system of free schools whereby all the children of the
State may receive a good common school education is a mandate
to the legislature and a limitation on the exercise of the power,
and whether such schools shall be provided is not left to the dis-
cretion of the legislature.

5. SAME—*school laws must be general and uniform.*  Laws for
the organization of school districts must be general and uniform in
their operation, as the legislature has never considered that a gen-
eral law cannot be made applicable in such cases.

6. SAME—*legislature may determine what constitutes common school education but cannot deprive children of such education.* The legislature has unquestioned power and discretion, within certain limits, to determine what a common school education shall be, but whatever that determination is, there is no power in the legislature to provide a system of schools which will deprive any children of the State of the opportunity to obtain such an education.

7. SAME—*there is no presumption that territory of community high school district is of proper proportions.* Section 89a of the School law, providing for the organization of community high school districts, does not prescribe what territory shall constitute such a district but has left that to the fifty legal voters who petition for the organization; and there is no presumption in favor of their action, as there is in the case of an act by the legislature itself.

8. SAME—*community high school curative act of 1921 does not create new districts.* The community high school curative act of 1921 does not, in terms, meaning or effect, create or attempt to create new high school districts, but only relates to the past and cures defects in the organization of districts already established and which are *de facto* districts until destroyed at the suit of the people by a direct proceeding in *quo warranto,* and the only effect of the curative act is to relieve such districts of the liability of being destroyed by such proceedings.

9. SAME—*when judgment of ouster must be entered against a community high school district.* Where the territory of a community high school district is of such proportions that it does not come within any definition of a community, and is not compact but is of such extent that children cannot reach the school conveniently from their homes in the time allotted them for travel before school opens in the morning, a judgment of ouster must be entered in a *quo warranto* proceeding attacking the validity of the organization of the district, and the curative act of 1921 cannot validate such a district.

DUNN, DUNCAN and THOMPSON, JJ., dissenting.

APPEAL from the Circuit Court of Fulton county; the Hon. WALTER C. FRANK, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, and FLACK, FLACK & KERMAN, for appellant.

HARVEY H. ATHERTON, and GLENN RATCLIFF, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Attorney General presented to the circuit court of Fulton county a petition for leave to file an information in the nature of *quo warranto* in the name of the People of the State of Illinois, on the relation of Ralph Leighty, to test the validity of the organization of Community High School District No. 281 in the counties of Fulton, Schuyler and McDonough. Leave was denied and an appeal to this court was prosecuted. The judgment was reversed and the cause remanded, and an opinion was filed declaring the law in respect to the questions presented by the petition. It was held that the validating act of 1921 cured alleged defects in the methods by which the district was organized, and therefore the petition presented no reason for filing an information on account of such alleged defects. The command of the constitution to the legislature to "provide a thorough and efficient system of free schools, whereby all children of this State may receive a good common school education," was construed, and it was held that the legislature would have no authority to create a school district which was not sufficiently compact to enable the children to reach the school conveniently, and it necessarily followed that it had no authority to legalize the organization of a district by curative act which it could not have authorized in the first instance. The petition alleged that the district did not meet the requirement of the constitution so as to enable all children within its territory to receive its benefits. It was held that the territory embraced within a community high school district must be sufficiently compact so all children residing in the district of high school age may conveniently travel from their homes to the school building in the time allotted them for travel before school opens in the morning; that the charge in the petition required the court to give leave to file the information, and that the question of fact could only be determined by proper plead-

ing and proof. (*People* v. *Young,* 301 Ill. 67.) The cause
was re-instated in the circuit court and leave was given to
file the information. Two of the defendants whose terms
of office had expired disclaimed, and their successors in
office, with the other defendants, filed a plea of justifica-
tion, setting out the organization of the district and alleg-
ing that it consisted of compact and contiguous territory
within the meaning of the laws of this State. The cause
was heard by the court at the May term, 1922, and taken
under advisement. On October 21, 1922, a judgment was
entered finding the defendants not guilty and dismissing
the information with costs. A second appeal to this court
was prosecuted.

Where a cause is brought to this court and considered,
its judgment as to all the points and questions presented and
decided will forever conclude the parties, and if the cause
is again brought before the court for review such questions
cannot be re-considered and they will not be open for dis-
cussion. Cases cannot be brought to this court and consid-
ered in fragments, and the court does not revise, review or
change its decisions except in accordance with the rules and
practice, which only permit such review upon a petition for
rehearing. On the former appeal a petition for rehearing
was presented and denied, and the law, including the con-
struction of the command of the constitution that a school
district shall be of such a character that all children within
the district may have the benefit of the school and receive
a good common school education, was settled and finally
determined. (*Hollowbush* v. *McConnel,* 12 Ill. 203; *Ris-
ing* v. *Carr,* 70 id. 596; *Smith* v. *Brittenham,* 94 id. 624;
*Hough* v. *Harvey,* 84 id. 308; *Moshier* v. *Norton,* 100 id.
63; *Newberry* v. *Blatchford,* 106 id. 584; *Tucker* v. *People,*
122 id. 583; *Smyth* v. *Neff,* 123 id. 310; *Chicago Theo-
logical Seminary* v. *People,* 189 id. 439; *City of Chicago*
v. *Lord,* 279 id. 167; *People* v. *Drainage Comrs.* 282 id.
514; 2 R. C. L. 223.) The lucid, explicit and intelligible

exposition of the mandate of the constitution, and the decision that the legislature has no power to create a school district not sufficiently compact to enable the children to reach the school conveniently so that all the children of the district may attend the school and obtain thereby a good common school education, are the law of this case, and the only question left to the circuit court or now to be considered is whether the territory of this district is of that character.

The district is ten miles east and west and ten miles north and south, and there are portions of the district eight or ten miles distant from Vermont, where the school is located. The question whether the district satisfies the mandate of the constitution will be best understood from the following plat:

In determining whether the territory which was organized as Community High School District No. 281 comes within the requirement of the constitution that it shall afford to all the children of the district a reasonable opportunity to receive a good common school education, that requirement and the meaning of the terms "community," "compact" and "contiguous" when applied to school districts are to be considered. Observing the law as settled on the former appeal that the school is for the people and not the people for the school, and therefore a community high school is a school for a community and not a changing of separate and diverse communities into a school community, this district extends far beyond any fair or reasonable definition of a community. Section 89*a* of the School law, under which the organization was attempted, required that the territory should be compact and contiguous. The curative act omitted the word "compact" but required that the territory should be contiguous. Any discussion of the difference between these terms, when considered in connection with the constitutional requirement, brings no results. The constitution is the supreme law, and the legislature could not, if it saw fit, set aside that law and provide that a district could be organized which would not meet its requirements. The legislature may add further conditions or limitations in harmony with the constitution, and in view of the constitutional provision the statutory requirements of compactness or contiguity are such limitations and nothing else. The State of Illinois is compact and its territory contiguous, but when these terms are applied to a school district, surely no one would be found to say that the constitution was satisfied if those limitations, only, were observed. Both the terms meant unity of the territory for the purpose of a community high school district, and required that the territory should be compact for that purpose and there should be no intervening territory. The omission of the

word "compact" in the curative act is of no consequence whatever and cannot serve to abrogate the constitution.

The constitutional provision is a mandate to the legislature and a limitation on the exercise of the power. (*Russell* v. *High School Board of Education*, 212 Ill. 327.) The mandate is to provide a thorough and efficient system of schools, and the limitations are that they shall be free to all children of the State and such that all the children may receive a good common school education. Whether such schools shall be provided is not left to the discretion of the legislature. In order that any comparison can be made concerning rules of law or decisions of the court applicable to certain conditions, there must be a fair resemblance between the different conditions compared. There is no similarity whatever between any law which has been considered and which was enacted under the requirements that the legislature shall enact liberal homestead and exemption laws, laws necessary for the protection of operative miners, or laws to give effect to article 13, relating to warehouses, and any law which would authorize the organization of a school district, on the petition of fifty legal voters, of such form and extent that all children within the district could not attend it. To make any comparison proper or effective a law would have to be found which would provide that fifty miners, fifty persons interested in homestead and exemption laws or in warehousing, or fifty legal voters, should have a right to determine in what territory the law should be operative and what persons should have the benefit of it, and the legislature not only could not but never has attempted to do such a thing. All laws on the subjects mentioned have been general and uniform in their operation, and as applied to schools every law must be of the same character. That was the identical ground upon which the act of June 5, 1911, was held in violation of the constitution, because where adjoining townships differed only in

309—3

population one could be organized into a township high school district and another could not. (*People* v. *Weis,* 275 Ill. 581.) It is true that the legislature has discretion to determine what shall constitute a good common school education, but this is because there is not, and was not at the adoption of the constitution, any accepted definition of that term. That question was considered in *Richards* v. *Raymond,* 92 Ill. 612, where the court said the phrase "a common school education" was not one easily defined; that one might say that a student instructed in reading, writing, geography, English grammar and arithmetic had received a good common school education, while another with more enlarged notions on the subject might insist that history, natural philosophy and algebra should be included; that it might be impossible to find two persons who would in all respects agree what constituted a common school education, and there was a want of uniformity in that respect and a difference of opinion when the constitution was adopted. The question was again considered in *Powell* v. *Board of Education,* 97 Ill. 375, where it was held that there was discretion in school officers to permit the German language to be taught because no accurate definition of a common school could be given, but the court held that the legislature would not have unbridled discretion in that regard but would be bound to conform to the popular understanding of what constitutes a common school education, and that such common understanding is that it is a school that begins with the rudimental elements of education, whatever else it may embrace, as contra-distinguished from academies or universities, devoted exclusively to teaching advanced pupils in the classics and in all the higher branches of study usually included in the curriculum of colleges. The legislature has unquestioned power and discretion, within the limits stated, to determine what a common school education shall be, but whatever that determination is, there is no discretion in the legislature to provide a system which

will deprive any children of the State of the opportunity to obtain such an education.

Not only is there no discretion in the legislature to disregard or set aside the constitution by creating or authorizing the creation of a school district of such a character that all children within its borders cannot enjoy its benefits, but the legislature has never created or authorized the creation of such a district. The fact that the legislature fixed an additional limitation or limitations in reference to compactness or contiguity, or both, is not the slightest evidence that the constitution was ignored or intended to be, and a charge of that kind is wholly unwarranted. Section 89*a* of the School law, providing for the organization of community high school districts, does not contain a single characteristic of a local or special law, but, like all general laws, prescribes certain conditions to which the law is made applicable. It does not prescribe any territory but leaves that to fifty legal voters, and there is no presumption in favor of their action as there is in the case of an act by the legislature itself. The curative act never in terms, meaning or effect created or attempted to create a district but only related to the past and cured defects in the organization. The statement in *People* v. *Opie,* 301 Ill. 11, was that the court had many times held that validating acts were not local or special laws, and that meant that the act only stated conditions to which the law applied wherever such conditions might exist. Wherever there had been a proceeding to organize a district in pursuance of section 89*a* the district became a *de facto* community high school district, and was entitled to exercise all powers of such a district against all the world except the people of the State, and then only by a direct proceeding in *quo warranto.* It could levy and collect taxes, hire and pay teachers, exercise the sovereign power of eminent domain and create obligations enforcible at law. The district would exist forever unless destroyed at the suit of the people, and the only

effect of the curative act was to relieve it from having its existence so questioned. (*Osborn* v. *People,* 103 Ill. 224; *Keigwin* v. *Drainage Comrs.* 115 id. 347; *Shriver* v. *Day,* 276 id. 403; *Howard* v. *Burke,* 248 id. 224.) To say that the act which declared that what was done in the organization of this district was legal and created the district, and at the same time that the act brought it into existence, would be a solecism. The second statement in *People* v. *Opie, supra,* that there is no constitutional prohibition against the establishment of school districts by local or special laws requires the needed qualification that in the judgment of the legislature no general law can be made applicable, and the history of legislation since 1870 demonstrates that the legislature has never considered that a general law could not be made applicable to the organization of school districts. Under the constitution of 1848 many school districts were created by local or special laws, but since the adoption of the present constitution general laws have uniformly been made applicable, and this is a sufficient reason, if there were no other, for holding that the curative act did not create this district.

As before stated, the territory embraced within this district does not come within any definition of a community given in this case, and on the trial it was proved that the territory was not compact and was of such extent that children could not reach the school conveniently from their homes in the time allotted them for travel before the school opens in the morning. Applying the rules of law finally and conclusively settled on the former appeal, the finding of the court was not justified and the judgment cannot be sustained.

The judgment is reversed and the cause remanded, with directions to enter judgment of ouster.

*Reversed and remanded, with directions.*

Mr. JUSTICE THOMPSON, dissenting:

This district, in my opinion, is compact as that term is used in describing high school districts, (*People* v. *Patterson,* 305 Ill. 541,) and it comprises less territory than many high school districts heretofore approved by this court. There are but fifty-six sections of land within its boundaries. Excepting the eight sections extending south into Schuyler county, Vermont (the school site) is substantially equidistant from the east and west and the north and south boundaries. The unincorporated hamlet of Ray is eight miles from Vermont, and is ten miles from Rushville, the next nearest high school site. If the children of Ray are to have high school privileges Vermont is best located to furnish them. It is nearest in distance, the roads are good and the railroad accommodations are reasonably convenient. Children from the Ray neighborhood have attended high school in Vermont for many years. Every school day there is a passenger train leaving Ray for Vermont at 5:20 A. M. and a freight train carrying passengers at 7:50 A. M. The latter is generally used by the children who depend on the trains. Returning in the evening, the freight train passes through Vermont around four o'clock and the passenger train at eight o'clock. While this district is not an ideal high school district, and while it is unfortunate that some children must suffer inconvenience to get a high school education, this is the best facility now provided for the territory and to destroy it is to render the school system less thorough and efficient. For these reasons, and the further reasons given in my dissenting opinion filed in *People* v. *Simpson,* 308 Ill. 418, I most respectfully dissent.

DUNN and DUNCAN, JJ., also dissenting.