(No. 15022.—Judgment affirmed.)

THE PEOPLE *ex rel.* C. J. Hepfer *et al.* Appellees, *vs.* JOHN M. PRICE *et al.* Appellants.

*Opinion filed October 20, 1923—Rehearing denied Dec. 5, 1923.*

1. SCHOOLS—*community high school validating act of 1921 is valid.* The act of May 10, 1921, validating community high school districts, is constitutional as applied to districts which the legislature had power to create.

2. SAME—*when community high school district violates constitutional provision for efficient school system.* A community high school district which extends thirteen miles east and west and ten and one-half miles north and south, so that pupils in three extremities of the district are required to travel from seven to ten miles to school and from one to five miles over dirt roads which the evidence shows to be impassable for weeks at a time every year, is formed in violation of the constitutional provision for a thorough and efficient system of free schools.

3. SAME—*constitution requires schools reasonably convenient to pupils.* Section 1 of article 8 of the constitution is not only a mandate requiring the legislature to provide an efficient system of free schools, but it is also a limitation on the power of the legislature in establishing schools by requiring that the system of free schools established must be such as to afford a good common school education to all the children of the State, and hence a school district must be of such size and the school so located that all the children in it may be able to attend school with reasonable convenience and comfort.

4. SAME—*the high school is a part of the public school system.* The high school is as much a part of the public school system of the State as the grade school, and within constitutional limitations the legislature may establish or authorize the establishment of high school districts.

CARTWRIGHT, J., took no part.

APPEAL from the Circuit Court of Ogle county; the Hon. HARRY E. EDWARDS, Judge, presiding.

SEYSTER & FEARER, and HENRY A. SMITH, for appellants.

JAMES L. McDOWELL, State's Attorney, H. A. BROOKS, ELWIN M. BUNNELL, and JAMES W. WATTS, for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This appeal is prosecuted from a judgment of ouster of the board of education of Community High School District No. 218, in Ogle county. The district was declared organized by virtue of an election held March 22, 1921, and a board of education was chosen at an election held in April following. The People, at the relation of several voters and tax-payers in the district, petitioned the circuit court for leave to file an information in the nature of *quo warranto* against the individuals who were acting as members of the board of education. The petition charged that the elections were void because they were not conducted according to the provisions of the Australian Ballot law; that the district was not compact and contiguous within

the meaning of the statute, because on account of the large size of the district, the distances many pupils would be obliged to travel to attend the school and the roads in the district being at times almost impassable, the school would practically be of no benefit to such pupils. Leave was granted relators and the information was filed. Defendants filed a plea of justification, and it was stipulated that the cause be tried on the affidavits of persons residing in the district, except that five witnesses on each side should testify in open court, and either party might introduce any map admissible under the rules of evidence. A jury was waived, case heard and judgment of ouster rendered, from which judgment this appeal is prosecuted.

The chief reliance of appellees in support of their contention that appellants were not a legal board of education was, that the election to organize the district was illegal and void because not held under the Australian Ballot law; that the territory embraced in the district did not constitute or comprise a community within the meaning of the statute; and that the district was not compact and contiguous within the meaning of the law.

Appellees submitted propositions of law and fact, from which it appears the court refused to hold the boundaries of the district did not conform to the boundaries of the Oregon community,—the city in which the school was conducted. Appellees have not assigned cross-errors on that ruling.

The court held the election to organize the district was illegal and void because not held under the Australian Ballot law; that the district was illegal and void because not sufficiently compact to enable all the children of high school age to attend the school with a reasonable degree of comfort; and the district was not an efficient school district within the meaning of the constitution.

The high school is conducted in the city of Oregon, which has a population of 2500, and as appears from the

map introduced in evidence is located at the center of Ogle county east and west and within two miles of the center north and south. The greatest width of the district east and west is thirteen miles and its greatest width north and south is ten and one-half miles. It embraces approximately ninety-three sections of land.

Appellants insist that if the district was one which the legislature might have created it was validated by the validating act of May 10, 1921. Appellees contend that the validating act is unconstitutional, but that if that is not so, the district is one which the legislature could not have established because it is in violation of the constitutional mandate that the General Assembly shall provide a thorough and efficient system of free schools, whereby all the children in the State may receive a good common school education. We have held that the validating act is constitutional as applied to districts which the legislature had the power to create. *People* v. *Opie*, 301 Ill. 11; *People* v. *Young*, id. 67; *People* v. *Benton*, id. 32; *People* v. *Graham*, id. 446; *People* v. *Woodruff*, 280 id. 472; *People* v. *Stitt*, id. 553; *People* v. *Madison*, id. 96.

The real contention in this case is whether the district, on account of its size and the character of the roads over which the pupils must travel to attend the school, is such that pupils cannot go from their homes to the school and return to their homes in a reasonable time and with a reasonable degree of comfort. Pupils living in the northeast, southeast and southwest parts of the district will have to travel from seven to ten miles to get to the school in Oregon. There are about forty-five miles of roads in the district leading into Oregon which are called in the record hard roads. They are roads which have been improved with macadam, gravel, cement, brick, asphalt, tarvia or other road-surfacing material. The board of supervisors of Ogle county has adopted the patrol system for State aid roads, and such roads in the district are looked after and

kept in repair by patrolmen, except during the months of December, January, February and March. The highway commissioner of the town of Oregon, who was a witness for appellants, testified that more than five-sixths of the roads in the community high school district were not patrolled. In the southwest, southeast and northeast parts of the district the roads are dirt roads, and people living in these sections, which are from seven to ten miles from Oregon, have to travel from one to five miles over dirt roads to reach any hard or improved road leading into Oregon. The oral testimony offered by appellees and the affidavits read by agreement on their behalf were all to the effect that children who lived in the sections of the district referred to would for considerable periods of time every year be prevented from attending the school on account of the distance and the impassable condition of the roads. The testimony of appellees' witnesses to this effect was voluminous and substantially unanimous. The witnesses were in the habit of using the roads they testified about, and gave their reasons for testifying that the condition of the roads in their neighborhood over which persons going to Oregon would be compelled to travel, made it impossible, for weeks at a time every year, for children to go to school in Oregon. We shall not attempt to set out the substance of all their testimony. Some of the instances they related as showing the condition of the roads were the miring down of automobiles and trucks. One witness testified he had seen twenty-four automobiles stuck in the mud on the roads and had pulled one or more of them out with a team. Another witness saw fifteen automobiles stuck in the mud last spring on the road about a mile from his house. A great many witnesses testified they had seen automobiles mired in roads, that had to be pulled out by teams or a tractor. One witness testified a milk wagon was mired in the mud and that five horses could not pull it out. The conditions the witnesses de-

scribe, which they testified made the roads impassable for weeks at a time every year, were caused by rains and mud and by heavy and drifting snow-falls. Many of appellees' witnesses testified that there were times every year when the roads were so bad that rural mail carriers could not complete their routes, and some residents on mail routes were compelled to go as far as two miles to get their mail. Many of the witnesses were fathers of children who lived at home, some of whom were of high school age and some were not. If their testimony is believed, on account of the distance to the school and the impassable condition of the roads every year for weeks at a time it would be practically impossible for their children to attend the school in Oregon during several weeks every year.

Appellants' evidence did not directly refute or contradict appellees' evidence. They offered very little proof as to the condition of the dirt roads pupils would have to travel over to get to Oregon, but in addition to proving the number of miles of improved roads leading into Oregon from all directions, and their locations, relied principally on the testimony of Stanley McNees, who testified he had lived in Oregon since September, 1920, and was "field man" for the Carnation Milk Products Company there, and of Arnold Maxwell, the superintendent of the same company. McNees testified he had charge of getting the milk from the farmers in the surrounding territory, except those who lived near by and hauled their own milk. His company received about 50,000 pounds of milk per day. It was hauled in every day in the summer, but in winter some of it was brought in every other day. The milk was hauled in by teams or motor trucks by twenty-three haulers over that many different routes. He described the routes and their respective lengths and the time required to make the round trips. He testified more roads had been surfaced with gravel since he had been acquainted with them and their condition had improved under the patrol system. He

said aside from a route where part of the road had been recently worked during the spring of this year all milk reached the factory every day. The loads would average about 1800 pounds, but some teams hauled more and some less. He further testified that in April, 1921, the milk was held up on two routes three days on account of snow. Some roads gave the haulers some trouble in October and November. On some of the roads during the spring and wet seasons farmers haul their milk to a certain point on the route, where it is picked up by the milk haulers. He testified one of his drivers used a team of horses hitched to the front of his truck sometimes, and another used four horses on his truck part of the time. Maxwell testified that the delivery of milk had been uninterrupted except for not more than five days in April, 1921, when there was a heavy snow storm, and one day in March, 1922, on account of excessive rains. Clarence S. Haas, employed in the business of making abstracts of title, testified he had lived in Oregon since 1892, knew the territory embraced in the district and was acquainted with a majority of the inhabitants therein. He said nearly all the roads leading into Oregon from all directions were well improved for distances of more than ten miles.

None of the above testimony meets the issue that in considerable portions of the district seven to ten miles distant from Oregon the roads are ordinary dirt roads, and many in going to the city are obliged to travel over dirt roads from one to five miles to reach an improved road, and that the dirt roads are impassable for weeks at a time every year. Unless that testimony was sufficient to overcome the testimony of appellees that many children from much of the territory in the district could not for periods of weeks at a time every year live at home and attend the school, it must be held the district as attempted to be organized was unauthorized by the constitution. That the dirt roads in the district, which have a larger mileage than

the improved roads, over which many people in the district are obliged to travel in going to and from Oregon, are impassable at times every year for ordinary travel must be considered as established by the proof unless that testimony is unworthy of belief. No reason appears why it should not be believed. There are no inherent improbabilities in the statements of the witnesses, they were not impeached, and their testimony was only by inference or indirection disputed or contradicted. If appellees' witnesses had been untruthful or if they were mistaken there should have been some proof by appellants from which that was made to appear.

We have held that section 1 of article 8 of the constitution is a mandate to the legislature requiring it to provide an efficient system of free schools whereby all the children may receive a good common school education. The same provision of the constitution is also a limitation on the legislative power, requiring that the system of free schools established must be such as to afford a good common school education to all the children of the State. (*People* v. *Young,* 309 Ill. 27; *People* v. *Simpson,* 308 id. 418; *People* v. *Baird,* 307 id. 503; *People* v. *Cowen,* 306 id. 330.) The high school is as much a part of our public school system as the grade school. (*People* v. *Chicago and Northwestern Railway Co.* 286 Ill. 384.) Within the constitutional limitation the legislature may establish or authorize the establishment of high school districts. The only limitation on the establishment of high school districts is the requirement that to be a part of the system of free schools the legislature is commanded to establish, the schools must afford all the children residing in the districts reasonably convenient opportunity to enjoy their benefits. At what distances from the school, territory may be incorporated in the high school district cannot in all cases be determined by the number of miles pupils would have to travel. On account of good roads and travel facilities territory five

miles from the school house might not be held to be too distant, while the same distance where roads and travel facilities are bad might be held so unreasonable as to violate the constitution. It must be admitted that from seven to ten miles is a considerable distance for pupils, and especially girls, to regularly attend school during the winter and stormy months of the Illinois climate, but when the roads over which they are required to travel to go to the school are for weeks at a time every year as bad as the testimony in this case shows, we cannot escape the positive conviction that many children in the district cannot enjoy the full benefit of the high school without undergoing hardships and exposures that no child should be subjected to and that no parent would permit.

A district might be so abnormal in size that for that reason alone it would be held invalid. Whether this district, aside from the obstacles to travel mentioned, would be too large to be valid we do not determine, but considering the distances many children would have to travel to reach the school and the obstacles to their regularly attending, it clearly appears that many children would be deprived of the benefits they are entitled to, of regular attendance during the entire school year. A district must be of such size and the school so located that all the children in it may be able, with reasonable convenience and comfort, to attend school. (*People* v. *Kirkham,* 301 Ill. 45.) The needs of the Oregon community for better high school facilities than those which have been heretofore maintained by the old Oregon district 88 may be conceded, but that can afford no excuse or justification for holding this district valid when it plainly violates the constitution. This court, in the interest of the cause of education, has gone to considerable lengths in sustaining community high school districts, but in no case have we disregarded the constitutional limitations. This district, in our judgment, cannot

be sustained without a disregard of the constitutional requirement that the size of the district and accessibility of the school shall be such that all the children in it may with reasonable convenience and comfort enjoy the benefits of the school. If they cannot, the district is one which the legislature could not establish and it has no power to validate it.

The judgment is affirmed.    *Judgment affirmed.*

Mr. Justice Cartwright took no part in the decision of this case.