THE PEOPLE *ex rel.* George M. Cole, Appellant, *vs.* ELI V. KINSEY *et al.* Appellees.

*Opinion filed April 24, 1925.*

1. SCHOOLS—*general rule as to when curative act will validate district.* The legislature by a curative act has power to validate such school districts as it may create in the first instance, and the act of May 10, 1921, may be applied to validate only such community high school districts as are composed of compact and contiguous territory.

2. SAME—*when decision of Supreme Court does not preclude application of curative act.* A judgment of the Supreme Court reversing the circuit court and holding that the latter court should have allowed an information in *quo warranto* to be filed against a community high school district and remanding the cause is not a final judgment, and its decision prior to the enactment of the curative act of May 10, 1921, cannot have the effect of precluding the application of said act to validate the district.

3. SAME—*general rule as to when a high school district is not compact and contiguous—curative act.* Community high school districts must afford to children within their boundaries an opportunity to enjoy with a reasonable degree of comfort the benefits of the school, and when a district is of such proportions that it does not come within any definition of a community and is of such extent and condition that children cannot reach the school with a reasonable degree of convenience it is not compact or valid in the constitutional sense and cannot be validated by curative act.

4. SAME—*when district is sufficiently compact.* A community high school district is sufficiently compact and contiguous where it

is almost rectangular in shape, being six by eight miles in the farthest length and width, and where the school is located in the only community center or incorporated city or village within the district, which is but seven miles from the farthest corner of the district and to which ordinary graded highways run from all parts of the district.

5. Same—*presumption is in favor of validity of school district.* Every reasonable presumption will be indulged in favor of the validity of a school district established by authority of the legislature, and courts will not hold a district invalid unless it clearly appears from the evidence that children of school age residing in the district cannot reasonably avail themselves of the privileges of the school.

Thompson, J., took no part.

Appeal from the Circuit Court of McDonough county; the Hon. George C. Hillyer, Judge, presiding.

Edward J. Brundage, Attorney General, Flack & Kerman, and Scofield & Bell, for appellant.

John C. Lawyer, Andrew L. Hainline, and Wallace A. Walker, for appellees.

Per Curiam: The appellant, on the relation of various tax-payers in Community High School District No. 315, in McDonough county, filed a petition for leave to file an information in the nature of *quo warranto* to test the legality of the organization of that district. The circuit court denied leave, and on appeal to this court the judgment of the circuit court was reversed and the cause remanded, with directions to permit the information to be filed. (*People v. Kinsey,* 294 Ill. 530.) The information was filed at the January, 1921, term of the circuit court of McDonough county. After settling pleadings a jury was waived and a hearing was had before the court, and evidence was taken concerning the question whether the district was compact and contiguous, and whether Colchester, the place where the high school is being conducted, is a community center.

for school purposes. On May 10, 1921, while the cause was pending in the circuit court, the legislature passed a curative act, the purpose of which was to validate the organization of school districts of this character. (Laws of 1921, p. 797.)

A written stipulation was filed at the commencement of the hearing herein, by which it appears that the principal questions in the case are, first, whether the curative act of May 10, 1921, applies to this district, and if not, whether a majority of the legal votes were cast in favor of the proposition for the establishment of the district; and second, whether the territory is compact and contiguous as required by law, and whether the district is formed around a community center.

The question of the application of the curative act of May 10, 1921, has received the attention of this court in numerous cases. In *People* v. *Price*, 310 Ill. 66, it was held that said act was constitutional as applied to districts which the legislature had power to create; that such act, however, does not apply to districts that are not compact and contiguous, for the reason that the legislature does not have power to create such districts.

Appellant contends that the curative act cannot be applied to this case because before its passage the judgment of this court in *People* v. *Kinsey, supra,* had been entered reversing the judgment of the circuit court denying leave to file the information in *quo warranto.* The judgment of this court in that case was in nowise final. The determination was merely that the circuit court should have permitted the information to be filed, and the judgment was reversed and the cause remanded, with directions to allow that to be done. No order of ouster had then, or has at any time since, been entered against these appellees or the district.

In *People* v. *Young*, 309 Ill. 27, and *People* v. *Clark*, 300 id. 583, it was held that where a cause is brought to

this court and considered, its judgment as to all points and questions presented is final, and the latter case holds that where this court has ordered a judgment of ouster prior to the passage of a curative act the latter does not apply. The holding of this court in the *Kinsey case* was, that under the law as it stood at the time of the election in question women did not have the right to vote. That was a final determination as to the law on that subject by this court. It did not hold, however, that the legislature did not have power to authorize women to vote, and no judgment of ouster was entered; nor was the question of the legality of the formation of this district in any way finally disposed of. The relief sought by review in the *Kinsey case* was against the order disallowing the filing of an information in *quo warranto.* This court has held in numerous cases that the legislature may by a curative act validate that which it had power to do in the first instance; that it may validate such community high school districts as it had power to create. *People* v. *Price, supra; People* v. *Opie,* 301 Ill. 11; *People* v. *Young,* 301 id. 67; *People* v. *Woodruff,* 280 id. 472; *People* v. *Stitt,* 280 id. 553; *People* v. *Madison,* 280 id. 96.

In *People* v. *Young,* 309 Ill. 27, it was held where the territory of a community high school district is of such proportions that it does not come within any definition of a community, and is not compact but is of such extent and condition that children cannot reach the school with a reasonable degree of convenience from their homes, such district is not in compliance with the constitutional mandate, and the curative act of 1921 could not validate it. The remaining question in the case therefore is whether or not this district is compact and contiguous and surrounds a community center, as required by law.

The district consists of territory almost rectangular in shape, the greatest distance north and south being eight miles and the greatest width east and west six miles. The

south four miles of the district is three and one-half miles wide east and west and the north four miles of the district is six miles east and west. Colchester, the only incorporated city or village within the district, has a population of about 1400. It is at that point the high school has been conducted since 1920. The distance from Colchester to the northern boundary of the district is slightly over four miles and to the southern boundary slightly less than four miles. It is approximately four miles to the west boundary of the north half of the district and one and one-fourth miles to the west boundary of the south half of the district. It is slightly over two miles to the east boundary line. The evidence shows that the northwest corner of the district is the farthest point from the school house, and the greatest distance from a dwelling house in that corner of the district to the school house is between six and one-half and seven miles. The greatest distance to the northeast corner is five and eight-tenths miles, to the southeast corner five and three-fourths miles and to the southwest corner five and one-tenth miles. A four-year high school has been conducted by the district in Colchester since September, 1920. The enrollment has grown from 111 pupils in 1920 to 142 pupils in 1923. It appears from the map offered in evidence that a stream known as the East Fork of Crooked creek flows through the district in a southwesterly direction, passing Colchester about a mile north of the city limits. In the southeast corner of the district a creek known as Troublesome creek extends from the northeast to the southwest. About two sections of the land of the district lie south of this creek.

The parties hereto by agreement each examined twenty witnesses pertaining to the question of the compactness of the district and whether or not Colchester constitutes a community center for school purposes. It would be of no assistance to review all this testimony and it would unduly extend this opinion to do so. It is similar in the matter

of contradictions and statements to cases of this character in which controverted questions of fact arise. On reading the abstract of the evidence it is apparent to us that the court, who heard and saw the witnesses, arrived at a right conclusion as to those questions.

The roads of the district are shown to be the ordinary graded country roads. The creeks, while small, get out of their banks in times of spring freshets and in places prevent travel for a short time. While the evidence shows that the roads in the neighborhood of Crooked creek are for this reason at times impassable, the map in evidence shows school houses located on these roads. We have frequently called attention to the fact that no school district can be so organized that the convenience of attending school will be the same to every pupil. In all rural school districts the attendance in school must depend in some measure on the roads of the district. The rule has been so frequently laid down in decisions of this court as to require no citation of them, that school districts of this character must afford to the children within their boundaries an opportunity to enjoy with a reasonable degree of comfort the benefits of the school. We are of the opinion from a reading of the evidence in this case that this district does not offend against the requirements as to compactness and contiguity.

Numerous witnesses were heard concerning the question whether or not Colchester is a community center for school purposes, as required by law. The evidence on this question covered a wide range. It showed that for a great majority of the people Colchester is the point where most of their trading is done, and that while a few students in the northwest corner of the district attend school in Blandinsville, pupils attend the school in Colchester from outside the district. Colchester is the only incorporated city or village in the district. Highways reach it from all parts of the district, and there are therefore natural reasons why it

should be a community center not only for school purposes but for other uses of the community.

Every reasonable presumption will be indulged in favor of the validity of a school district established by authority of the legislative department of the government, and courts will not hold the district invalid unless it clearly appears from the evidence that children of school age residing in the district cannot reasonably avail themselves of the privileges of the school. (*People* v. *Standley,* 313 Ill. 46.) We are of the opinion that the weight of the evidence in this case does not show that this district is illegally organized, and the circuit court was therefore right in quashing the information.

The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*

Mr. JUSTICE THOMPSON took no part in this decision.

---

(No. 16593.—Affirmed in part and reversed in part.)
THE PEOPLE *ex rel.* G. Stanley Olmsted, County Collector, Appellee, *vs.* THE CHICAGO, TERRE HAUTE AND SOUTHEASTERN RAILWAY COMPANY *et al.* Appellants.

*Opinion filed April 24, 1925.*

1. TAXES—*town road and bridge tax must be itemized.* Section 50 of the Road and Bridge act, as amended in 1923, requires the highway commissioners, in levying a town road and bridge tax, to state separately the several amounts to be levied and the purposes for which they are levied, and where the certificate of levy is for a lump sum the levy is void.

2. SAME—*when oral testimony is admissible to amend date of certificate of levy.* Where the town clerk's certificate of the levy of the town tax, as filed with the county clerk, is dated prior to the date of the town meeting which authorized the tax, oral testimony is admissible to explain the levy and to amend the date of the certificate.