COMMITTEE FOR EDUCATIONAL RIGHTS *et al.*, Plaintiffs-Appellants, v. JIM EDGAR, Governor of the State of Illinois, *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—92—2379

Opinion filed September 29, 1994.—Rehearing denied November 2, 1994.

Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, William J. Holloway, Joshua G. Vincent, and William Gleeson, of counsel), for appellants.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Rita M. Novak, Assistant Attorney General, of counsel), for appellees.

Thomas J. Bamonte and Gary S. Caplan, both of Sachnoff & Weaver, Ltd., of Chicago (Karen Berman, of Chicago Lawyers' Committee for Civil Rights Under Law, Inc., of counsel), for *amicus curiae* Chicago Urban League.

Robert L. Graham and Christine A. Picker, both of Jenner & Block, of Chicago (Harvey Grossman and Jane M. Whicher, both of Roger Baldwin Foundation of ACLU, Inc., of counsel), for *amicus curiae* American Civil Liberties Union of Illinois.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiffs challenge the way public education is financed in Illinois. The complaint addresses differences in taxable wealth among school districts and the effect of those differences on the ability of poorer districts to offer students benefits and educational opportunities equal to those available to students in wealthier districts. Under the Illinois school funding scheme, the legislature establishes a minimum expenditure for each child in the State. To the extent local resources fail to generate enough funds, the State provides supplementary aid based upon a complex formula that is rereckoned and adjusted at each session of the General Assembly.

The questions presented on review are whether Illinois' statutory scheme for financing public education violates the education article (Ill. Const. 1970, art. X, § 1) and the equal protection clause (Ill. Const. 1970, art. I, § 2) of the Illinois Constitution of 1970. The constitutionality of the statutory scheme applied to economically disadvantaged students is also challenged.

The Illinois public school system is administered under the School Code (Ill. Rev. Stat. 1989, ch. 122, par. 1—1 *et seq.*). Three sources combine to fund public education: Federal aid, State aid, and local property taxes. Because property values differ from district to district, the money raised from local taxes and spent on each student varies depending on the district's wealth, the tax referendum decision of voters, and the policy decisions made by local school boards as they allocate money to pay for programs. Discretionary local spending creates spending differences among the districts which are only partly offset by the State's equalization aid and other assistance.

The plaintiffs are 37 school districts in Illinois, 11 parents, 11 students, and the Committee for Educational Rights. They sought a declaratory judgment that the School Code violated the Illinois Constitution of 1970. The trial court dismissed the complaint for failure to state a cause of action under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). We affirm.

To withstand a motion to dismiss, the allegations of a complaint must state a cause of action upon which relief may be granted. (*Bur-*

*dinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 565 N.E.2d 654.) When the legal sufficiency of a complaint is challenged, we accept as true all well-pleaded facts, but do not accept conclusions unsupported by facts in the complaint. *Burdinie*, 139 Ill. 2d at 505, 565 N.E.2d at 657.

The plaintiffs first argue the School Code violates the education article of the Illinois Constitution "to the extent that the Statutory Scheme of School Finance fails to correct the differences in spending and educational services resulting from differences in local wealth."

■ Section 1 of the education article provides:

"§ 1. Goal—Free Schools

A fundamental goal of the People of the State is the educational development of all persons to the limits of their capacities.

The State shall provide for an efficient system of high quality public educational institutions and services. Education in public schools through the secondary level shall be free. There may be such other free education as the General Assembly provides by law.

The State has the primary responsibility for financing the system of public education." Ill. Const. 1970, art. X, § 1.

The plaintiffs allege, "[s]pending differences translate into differences in the educational service levels and physical facilities, so that school children in low Wealth districts receive fewer educational opportunities than the children in high Wealth districts." They argue "that an efficient system of public school funding must be fiscally neutral," and because "the system is not fiscally neutral, it is unconstitutional." Plaintiffs define a "fiscally neutral" system as "one that does not base educational spending differences per district on the irrelevant factor of local property wealth."

Article X does not contain a "fiscal neutrality" mandate, and we are reluctant to read one into the efficiency clause and so limit the options of the legislature in adopting a school financing scheme. The State Board of Education sets minimum standards for educational services in each district and State aid is conditioned on meeting them. The complaint does not allege that the education offered in the plaintiffs' school districts falls below these minimum standards or that plaintiffs are being denied a minimally adequate education.

■ The education article requires the legislature to establish an "efficient system of high quality education." While the complaint ties differences in educational opportunities to the way education is financed, the claimed constitutional violation rests not on the adequacy of education in a district, but on differences in benefits and opportunities offered from district to district. The education article

does not mandate equal educational benefits and opportunities among the State's school districts as the constitutionally required means of establishing and maintaining an "efficient" system of free public schools. It does not make value judgments that foreign languages are subordinated to computer science or music to home economics. It does not require the same instruction in all schools. To allege that certain educational resources are unavailable in poorer school districts, or inferior to those in wealthier districts, does not compel the conclusion that the funding provided by the State's financing system is insufficient to provide an adequate education.

Elimination of disparity among school districts is a goal, but it is not required under the Illinois Constitution. "[T]he question of the efficiency of the educational system is properly left to the wisdom of the legislature." (*Cronin v. Lindberg* (1976), 66 Ill. 2d 47, 360 N.E.2d 360.) We conclude plaintiffs have failed to state a cause of action that the method chosen by the legislature to finance public schools violates the education article of the constitution.

Plaintiffs next argue they have been denied equal protection of the laws. The complaint reads:

"The Statutory Scheme of School Finance operates to deny many school districts and school children the equal protection of the laws. These statutes discriminate against many school districts and many children by basing differences in spending for a child's education upon differences in the Equalized Assessed Valuation of the real property in the district. To the extent that children are denied, and school districts are denied resources to provide, educational services made available to others as a result of differences in Local Property Wealth, the Statutory Scheme of School Finance is constitutionally invalid."

An equal protection claim is well taken when an allegation is made that persons similarly situated are treated in different ways without a rational relationship to a legitimate State purpose. The government may differentiate between persons similarly situated as long as the classification bears a reasonable relationship to a legitimate legislative purpose: where no fundamental right or suspect class is involved, a legislative classification need bear only a rational relationship to a legitimate State purpose. (*Mount Prospect State Bank v. Village of Kirkland* (1984), 126 Ill. App. 3d 799, 467 N.E.2d 1142.) Plaintiffs do not argue that they form a "suspect" class. Instead, they argue the right to an education is fundamental, rendering the School Code subject to strict scrutiny.

The constitution requires the State to provide free public school education through the secondary level. (Ill. Const. 1970, art X, § 1.)

But even if we concede for the sake of argument that the explicit right to a free public education through the secondary level may be characterized as fundamental, the benefits and opportunities that may flow from the educational experience—from magnet schools in our inner cities to Olympic-size swimming pools in our most affluent suburbs—are not fundamental in the sense plaintiffs use the word. There are different ways of insuring optimum educational experiences without suggesting that every student is constitutionally deprived if she or he is not attending a magnet school or swimming in uniform size pools.

■ Fundamental rights, as defined by our supreme court, are those that " 'lie at the heart of the relationship between the individual and a republican form of nationally integrated government.' " (*Kalodimos v. Village of Morton Grove* (1984), 103 Ill. 2d 483, 509, 470 N.E.2d 266, 277, quoting *People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 97, 368 N.E.2d 903, 907.) Plaintiffs do not allege they are denied a basic, adequate, or even a minimum education. They do not allege that a member of the class has been deprived of the right to attend a free public school through the secondary level or that the schools they do attend fail to meet minimum standards. Their arguments of inadequacy do not refer to any State mandated norm, but to the offerings of other school districts that they claim are more adequate because they have more money and provide more opportunities.

Plaintiffs' complaint assumes that the amount of money spent equals a better education but offers no empirical evidence for this assumption. If such evidence exists, demonstrating that the students in what the plaintiffs refer to as "rich" districts consistently do better than those in "poor" districts, plaintiffs should have pled these facts to support their conclusion. Nowhere in their comparison of "rich" and "poor" school districts are there references to educational achievements of the students based upon commonly accepted norms, which are then related to the per-pupil expenditures in these districts. Instead, plaintiffs allege they are denied equal protection of the laws because they do not receive *the same* "educational services made available to others," because of differences in wealth. But the education article provides that "educational development of all persons," as opposed to a free public school education through the secondary level, is a "fundamental goal," not a right. (Ill. Const. 1970, art. X, § 1.) Equal educational opportunity, as the plaintiffs have defined it—with several references to physical resources, such as computers and enriched offerings in academic disciplines—is not required under the constitution; nor does it lie at the heart of the relationship between individuals and their government.

Under the rational basis test—the appropriate level of scrutiny when no fundamental right is involved—the relevant question is whether the School Code bears a rational relationship to a legitimate governmental interest. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 120, 412 N.E.2d 151, 153.) We presume a statute is valid; the burden is on the party challenging validity to prove it is irrational. (*People v. Gurell* (1983), 98 Ill. 2d 194, 204-05, 456 N.E.2d 18, 22.) Plaintiffs have not sustained their burden. They continually reference the outward manifestations of education in contrasting a "rich" and "poor" school district: courses offered, teacher salaries, the condition of the physical plant. But nowhere in their complaint or in their briefs do they contrast the educational achievement of students in different districts.

The equal protection argument made in this case is similar to that made in *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 36 L. Ed. 2d 16, 93 S. Ct. 1278. In *Rodriguez*, the plaintiffs contended that the Texas system of funding education was unconstitutionally discriminatory. There, the Court examined the basic structure of the system and concluded it was rationally related to a legitimate State purpose. The Court found that spending disparities resulting from differences in local taxes were acceptable because they were related to the State goal of allowing local control over school funding levels.

In *McInnis v. Shapiro* (N.D. Ill. 1968), 293 F. Supp. 327, *aff'd sub nom. McInnis v. Ogilvie* (1969), 394 U.S. 322, 22 L. Ed. 2d 308, 89 S. Ct. 1197, the court held that the Illinois scheme for financing public education reflected a rational policy consistent with the mandate of the Illinois Constitution of 1870. The court explained:

"[T]he General Assembly's delegation of authority to school districts appears designed to allow individual localities to determine their own tax burden according to the importance which they place upon public schools. *** While some communities might place heavy emphasis on schools, others may cherish police protection or improved roads. The state legislature's decision to allow local choice and experimentation is reasonable ***." *McInnis*, 293 F. Supp. at 333.

We agree with the reasoning in *Rodriguez* and *McInnis* and conclude that Illinois' school financing scheme is rationally related to the goal of local control, which is a legitimate State purpose. We are aware that *McInnis* was decided before the Constitutional Convention of 1970. But, as the trial court noted in its thorough review of the debates preceding adoption of the 1970 education article:

"Since the Illinois Constitutional Convention convened but a

year after the *McInnis* decision, the Constitutional Delegates were obviously aware that financial non-parity with respect to public education did not violate the Federal Constitution and, if they so chose to make it a constitutional right of Illinois children, they could have expressed such intent in the Education Article. However, the delegates did not do so."

■ We next address the constitutionality of the School Code as it applies to economically disadvantaged students. This group includes children who are at risk of being educationally disadvantaged because they reside in an urban community characterized by a high degree of household poverty. "At risk" children are eligible to participate in prekindergarten programs under section 2—3.71 of the School Code (Ill. Rev. Stat. 1989, ch. 122, par. 2—3.71). That section provides in part:

"(a)(1) The State Board of Education shall implement and administer a grant program under the provisions of this subsection which shall consist of grants to public school districts to conduct preschool educational programs for children ages 3 to 5 which include a parent education component. ***

* * *

(4) The State Board of Education shall provide the primary source of funding through appropriations for this program. Except as otherwise provided in subsection (b), such funds shall be distributed for the benefit of children who because of their home and community environment are subject to such language, cultural, economic and like disadvantages that they have been determined as a result of screening procedures to be at risk of academic failure. Such screening procedures shall be based on criteria established by the State Board of Education." Ill. Rev. Stat. 1989, ch. 122, pars. 2—3.71(a)(1), (a)(4).

Plaintiffs argue the requirements of the education article have not been met because the School Code does not provide sufficient funds to meet the needs of "at risk" children. Plaintiffs state, "The failure to provide resources to school districts *** to provide *** programs to eliminate or reduce the educational deficits of At Risk children constitutes a failure to provide a high quality, or even the lesser included standard of minimally adequate, education for At Risk children."

Plaintiffs do not cite to a statutory requirement for the "lesser included standard of minimally adequate education." In fact, there is none, for the School Code does not contain minimum requirements for the education of "at risk" children. Nor does the education article require the legislature to fund these aid programs. All the School Code requires is that school boards provide grants for educationally

disadvantaged children. In the absence of facts to support the conclusory language of the count, plaintiffs have failed to state a cause of action.

We further reject plaintiffs' claim that the School Code "operates to deny many school districts with At Risk children *** the equal protection of the laws," based on our previous finding that equal educational benefits and opportunities are not rights guaranteed under the constitution. We find that the statutory requirements for the operation of the grant program are rationally related to the goal of local control.

■ Finally, we address plaintiffs' citation to additional authority after oral argument. (See *Abbott v. Burke* (1994), 136 N.J. 444, 643 A.2d 575.) The New Jersey Supreme Court held a school funding scheme similar to ours to be unconstitutional, for the same reasons advanced by the plaintiffs here and in the spirit and tone of *Serrano v. Priest* (1976), 18 Cal. 3d 728, 557 P.2d 929, 135 Cal. Rptr. 345.

There is no way to reconcile our decision with these cases other than to cite *Rodriguez*, in which the Supreme Court of the United States let stand the Texas school funding system similar to that in California, Illinois, and New Jersey. There the court said:

> "The consideration and initiation of fundamental reforms with respect to state taxation and education are matters reserved for the legislative processes of the various States, and we do no violence to the values of federalism and separation of powers by staying our hand. We hardly need add that this Court's action today is not to be viewed as placing its judicial imprimatur on the status quo. The need is apparent for reform in tax systems which may well have relied too long and too heavily on the local property tax. And certainly innovative thinking as to public education, its methods, and its funding is necessary to assure both a higher level of quality and greater uniformity of opportunity. These matters merit the continued attention of the scholars who already have contributed much by their challenges. But the ultimate solutions must come from the lawmakers and from the democratic pressures of those who elect them." *Rodriguez*, 411 U.S. at 58-59, 36 L. Ed. 2d at 57-58, 93 S. Ct. at 1309-10.

Affirmed.

HOFFMAN, P.J., and THEIS, J., concur.