LEWIS E. *et al.*, by Their Next Friends and Guardians *ad litem*, Gwen E., *et al.*, Plaintiffs-Appellants, v. JOSEPH A. SPAGNOLO, State Superintendent of Education, *et al.*, Defendants-Appellees.

Fifth District   No. 5—95—0681

Opinion filed May 2, 1997.

Thomas E. Kennedy III, of Alton, Susan Wishnick, Benjamin S. Wolf, and Harvey Grossman, all of The Roger Baldwin Foundation of the ACLU, Inc., Harold C. Hirshman, David E. Lieberman, and Lisa M. Martens, all of Sonnenschein, Nath & Rosenthal, both of Chicago, and Donald L. Wolff, of Law Offices of Donald L. Wolff, of St. Louis, Missouri, for appellants.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Rita M. Novak, Assistant Attorney General, of counsel), for appellees Joseph A. Spagnolo and State Board of Education.

Pearson C.J. Bush and Robert L. Merriwether, Jr., both of East St. Louis, for other appellees.

JUSTICE HOPKINS delivered the opinion of the court:

The plaintiffs in this case are school children living in East St. Louis. They come to the court through their parents and guardians as next friends. Defendants are Joseph A. Spagnolo, the State Superintendent of Education; the State Board of Education (the State Board); the Board of Education, East St. Louis School District 189 (District 189); and Geraldine Jenkins, the superintendent of District 189. Where applicable, we refer to Spagnolo and the State Board collectively as the State defendants and Jenkins and District 189 as the local defendants. Plaintiffs seek injunctive and declaratory relief, claiming that defendants have deprived them of a minimally safe and adequate education.

## I. FACTS AND STANDARD OF REVIEW

On April 12, 1995, plaintiffs filed a complaint on behalf of themselves and a proposed class of all school-age children in District 189. The trial court has not yet ruled on the motion to certify the proposed class, because it dismissed the complaint with prejudice on September 5, 1995.

The 36-page complaint alleged that the State and local defendants had violated the education article of the Illinois Constitution (Ill. Const. 1970, art. X, § 1), the due process clauses of the Illinois Consti-

tution (Ill. Const. 1970, art. I, § 2) and the United States Constitution (U.S. Const., amend. V), the School Code (105 ILCS 5/1—1 (West 1992)), and Illinois common law.

Because the trial court dismissed the complaint with prejudice, we review the factual allegations of the complaint *de novo* (*Joseph v. Collis*, 272 Ill. App. 3d 200 (1995)), in the light most favorable to plaintiffs, accepting all well-pleaded facts and inferences to be drawn from those facts as true. *Bivin v. Wright*, 275 Ill. App. 3d 899 (1995). The most basic question we must answer is whether the complaint alleges sufficient facts to establish a cause of action upon which relief can be granted. *Bivin*, 275 Ill. App. 3d at 902.

If the allegations of the current complaint do not state a cause of action, then we must decide if it clearly appears that no set of facts can be alleged that will entitle plaintiffs to recover, for if any possible set of facts could entitle plaintiffs to recover, then plaintiffs should be given an opportunity to amend their complaint. *Cantrell v. Wendling*, 249 Ill. App. 3d 1093 (1993). The decision whether to allow an amendment is a matter within the sound discretion of the trial court, and its ruling on a motion for leave to amend will not be disturbed absent an abuse of discretion, but that discretion should be exercised liberally in favor of allowing an amendment if that will further the ends of justice. Any doubts should be resolved in favor of allowing amendments. *Cantrell*, 249 Ill. App. 3d at 1095.

In order to summarize the detailed complaint, we quote from the complaint's introductory section, which accurately reflects the specific factual allegations found in the body of the complaint:

"For themselves, and on behalf of all school-age children in East St. Louis School District 189 ***, Plaintiffs bring this class action to enforce their constitutional and statutory rights to a safe and adequate public school education.

By any reasonable measure, the public schools of District 189 are neither safe nor adequate. Strangers wander in and out of junior high schools. Fire alarms malfunction, and firefighters find emergency exits chained shut as they rescue children from burning schools. Classrooms are sealed to protect students from asbestos and dangerous structural flaws.

In dark corridors, light bulbs go unreplaced and rain seeps through leaky roofs. In heavy rains backed-up sewers flood school kitchens, boilers, and electrical systems, resulting in student evacuations and cancelled classes. Bathrooms are unsanitary and water fountains are dry or spew brown water.

In winter, students sit through classes wearing heavy coats because broken windows and faulty boilers go unrepaired. They struggle to learn using meager instructional equipment and tat-

tered, dated textbooks. School libraries are locked or destroyed by fire. Children never know whether they will have a teacher, since District 189 is chronically short staffed, and teachers are often absent or disengaged from students.

In these squalid surroundings, and denied adequate instruction, children cannot reasonably be expected to learn. On standardized tests, District 189 students score significantly below students in other districts, and most fail to achieve official State minimum goals. Deprived of even a minimally adequate education, barely half the District's students graduate from high school, and many who manage to graduate are ill-prepared for skilled jobs, college or meaningful participation in a democratic society. Defendants are legally obligated to take all measures necessary to provide Plaintiffs with such an education, yet, for decades, [they] have knowingly allowed conditions and services to deteriorate so that District 189 now provides one of the worst school systems in the nation.

Plaintiffs bring this action to correct these intolerable and illegal conditions under the Illinois Constitution, the Illinois School Code ***, and the U.S. Constitution, each of which guarantees each child in Illinois an adequate public education in a safe environment. Plaintiffs also invoke the concurrent jurisdiction of the Court and bring their Federal Constitutional claim pursuant to 42 U.S.C. §§ 1983 and 1988.

Plaintiffs seek an order compelling Defendants to take all appropriate and meaningful measures to provide, at long last, the safe and adequate schools to which Plaintiffs and all Illinois children are entitled."

On September 5, 1995, the trial court granted defendants' combined motions to dismiss the complaint under sections 2—615(a) and 2—619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2—615(a), 2—619(a)(1) (West 1994)). In the order of dismissal, the court determined that no constitutional, statutory, or common law "provide[s] a basis for these minor students to obtain the ultimate redress sought here[—]the judicial dismantlement of School District 189." Additionally, the court stated, "This is not to say that some of the wrongs asserted could not find judicial redress in some limited, narrowly defined, circumstances, but not, at the instance of these plaintiffs, under the circumstances herein alleged."

The trial court dismissed the complaint with prejudice. We affirm the dismissal but find that plaintiffs should have the opportunity to amend their complaint.

## II. DISCUSSION

## A. EDUCATION ARTICLE OF THE ILLINOIS CONSTITUTION

■ The portion of the education article of the Illinois Constitution which is relevant to this appeal provides as follows:

> "A fundamental goal of the People of the State is the educational development of all persons to the limits of their capacities.
>
> The State shall provide for an efficient system of high quality public educational institutions and services. Education in public schools through the secondary level shall be free." Ill. Const. 1970, art. X, § 1.

Plaintiffs argue that the above constitutional provision entitles them to "a free public school education." Plaintiffs stress not only that defendants have deprived them of a "high quality" education but, more significantly, that defendants have deprived them of a minimally adequate education. Plaintiffs argue: "[I]nherent in the substantive notion of what constitutes 'public school educational institutions and services' mandated by the Illinois Constitution must be educational institutions and services that meet minimum standards of adequacy. Anything else cannot fairly be deemed an education." Plaintiffs urge this court to allow them the opportunity to prove that the schools provided in District 189 are a "sham" that by any reasonable definition fall far below the minimum required by the Illinois Constitution.

■ We note initially that plaintiffs' complaint alleges generally that defendants are charged with providing a safe and adequate education to District 189 students and that "[b]y any standard, the public schools of District 189 are unsafe [and] inadequate." However, we cannot find sufficiently detailed facts stating the particular acts or omissions of defendants that have allegedly created the abhorrent conditions attributed to these schools. Without factual allegations alleging the specific wrongs of defendants, the complaint cannot allege a cause of action upon which relief can be granted. Therefore, the trial court did not abuse its discretion in dismissing the complaint. Nevertheless, we must also consider whether it is possible for plaintiffs to state any cause of action upon which relief can be granted, since the trial court dismissed the complaint with prejudice.

■ Thus, we next decide whether a cause of action can be stated for the deprivation of a minimally safe and adequate education under the Illinois Constitution. We hold that the Illinois Constitution does indeed provide for at least a minimally adequate education and that those allegedly harmed by the lack of education, such as these plaintiffs, may bring that cause of action in the circuit courts of Illinois.

To our knowledge, the particular question presented by this appeal has not been considered by any Illinois court. However, several courts have stated the conclusion that the right to an education is mandated by our constitution. See *Board of Education of Community Unit School District No. 2 v. Redding*, 32 Ill. 2d 567 (1965) (the education article of the 1870 Illinois Constitution mandated that our school system be thorough and efficient); *People ex rel. Leighty v. Young*, 309 Ill. 27, 30-31 (1923) ("[T]he legislature has no power to create a school district not sufficiently compact to enable the children to reach the school conveniently so that all the children of the district may attend the school and obtain thereby a good common school education ***"); *Stasica v. Hannon*, 70 Ill. App. 3d 785, 788 (1979) (school children and their parents have an enforceable "right to receive a public education as guaranteed by" the education article). Whatever school system is established by our legislature, it must be free and open to all, without discrimination. *People v. Deatherage*, 401 Ill. 25, 30 (1948); *Jenkins v. Leininger*, 277 Ill. App. 3d 313, 317 (1995).

Defendants argue that the constitutional mandate regarding education is directed exclusively to the legislature and that the education article reserves to the legislature alone the power to determine how best to satisfy that constitutional demand. Defendant's argument is based upon the law. *Deatherage* and *Jenkins* are but two examples of the well-settled principle that the constitutional mandate of a free and nondiscriminatory public school education is a matter left entirely to the discretion of the legislature. The corollary of this rule is equally clear; the courts are not to interfere in any way with the legislative prerogative of how our school system is to be established. "This court has *** been consistent in holding that the question of the efficiency and thoroughness of the school system established by legislative permission is one solely for the legislature to answer and that the courts lack power to intrude." *Deatherage*, 401 Ill. at 31.

The problem with defendants' argument is that the legislature has delegated to these defendants the authority to carry out the mandate of the education article. Plaintiffs' argument is that the legislative will is being thwarted and trampled by these defendants, who refuse to carry out their duty to provide plaintiffs with an education. As we will show, plaintiffs are entitled to an opportunity to amend their complaint if they have facts to show how these defendants have acted arbitrarily or unreasonably in carrying out their delegated duties.

We find the first district case of *Stasica* instructive as to when the circuit court should adjudicate a complaint regarding a depriva-

tion of education. In *Stasica*, the plaintiffs, who were the parents of children registered to begin kindergarten in September 1977, brought a class action against the superintendent and the local board of education seeking an injunction against the closing of that school. The trial court granted the relief requested by the plaintiffs. The sole issue on review was whether the trial court erred by denying the defendants' motion to dissolve the preliminary injunction. The appellate court held that the court's decision was not an abuse of discretion because the defendants failed to give plaintiffs adequate notice of the school's closing. The court's rationale was as follows:

> "[T]he power of the Board and its superintendent is not absolute. A court will interfere with the exercise of legislative powers and substitute its judgment when it appears that the Board has acted palpably, arbitrarily, unreasonably or capriciously." *Stasica*, 70 Ill. App. 3d at 788.

The court held that the school children for whom the action was brought had a "right to receive a public education as guaranteed by" the education article. *Stasica*, 70 Ill. App. 3d at 788; accord *Elliot v. Board of Education*, 64 Ill. App. 3d 229 (1978); *Allen v. Maurer*, 6 Ill. App. 3d 633 (1972); see also *Tyska v. Board of Education Township High School District 214*, 117 Ill. App. 3d 917, 922 (1983) (the courts are not to interfere with the discretionary decisions of a school board unless its action is shown to be "palpably arbitrary, unreasonable or capricious"). The court in *Stasica* noted an important distinction that gave the plaintiffs therein standing to sue the school officials: the plaintiffs were not seeking to have the court overrule the Board's decision but were seeking to have the court find that the Board acted arbitrarily and capriciously in implementing its decision to close the school. *Stasica*, 70 Ill. App. 3d at 789.

Although this case is one of first impression, our decision is supported by the rationale of prior cases. Two of those cases characterize the distinction we feel is important in allowing a cause of action such as this to come before the court.

In *People ex rel. Leighty v. Young*, 309 Ill. 27 (1923), the supreme court considered a petition for *quo warranto* which was dismissed by the circuit court. The supreme court reversed the dismissal and remanded the case to the circuit court. On remand, the trial court found the school district's boundaries to be constitutional. In the second appeal, the supreme court reversed the trial court's decision regarding the boundaries of the school district, finding that the 1870 constitution required that all children are entitled to receive a good common school education and that the district established in that case was not compact enough to allow the children reasonable access to the schools in the district. According to the supreme court in 1923:

"The legislature has unquestioned power and discretion, within the limits stated, to determine what a common school education shall be, but whatever that determination is, *there is no discretion in the legislature to provide a system which will deprive any children of the State of the opportunity to obtain such an education.*" (Emphasis added.) *Leighty*, 309 Ill. at 34-35.

Defendants argue that boundary cases such as *Leighty* are distinguishable and not persuasive in deciding the issue presented herein. We disagree. If school children have a right to reasonable access to a public school, then they must also have a right to a minimally safe and adequate education once they get there. The court in *Leighty* reached its result by employing the same reasoning urged by plaintiffs in this case. In *Leighty*, the district boundaries were found to extend "far beyond any fair or reasonable definition of a community." *Leighty*, 309 Ill. at 32. In the case at bar, plaintiffs seek the opportunity to prove that, by any reasonable definition, the children in District 189 have been deprived of a minimally safe and adequate education. We believe that if the constitution protects the lesser right of reasonable access to schools, it must also protect the greater right of a minimally safe and adequate education, for if our public schools deny our children a reasonably adequate education, then they also deny them a *free* education.

In *Committee for Educational Rights v. Edgar*, 267 Ill. App. 3d 18 (1994), *aff'd*, 174 Ill. 2d 1 (1995), the appellate court held that the education article does not mandate fiscal neutrality, but the court went on to find that the "State Board of Education sets minimum standards for educational services in each district and State aid is conditioned on meeting them." *Committee for Educational Rights*, 267 Ill. App. 3d at 21. The complaint in *Committee for Educational Rights* was dismissed by the trial court, and that dismissal was affirmed on appeal by both the appellate and supreme courts. However, the appellate court noted, we feel significantly, that "[t]he complaint [did] not allege that the education offered in the plaintiffs' school districts falls below these minimum standards or that plaintiffs are being denied a minimally adequate education." *Committee for Educational Rights*, 267 Ill. App. 3d at 21.

The supreme court did not address the "minimally adequate" language used in the appellate court opinion. On the other hand, the supreme court did not challenge that language in any way, presumably because the issue was whether the funding procedures created by our legislature fall short of the constitutional mandate of "an efficient system of *high quality* public educational institutions and services." (Emphasis in original; other emphasis omitted.) *Committee for*

*Educational Rights*, 174 Ill. 2d at 10. We also find the *Jenkins* case, relied upon by defendants, inapposite for the same reason. See *Jenkins*, 277 Ill. App. 3d at 323 (wherein the court held that the 1970 constitution does not make the right to a *high quality* education a fundamental right under constitutional analysis). We find nothing in the supreme court's decision in *Committee for Educational Rights*, or in any other reported decision, that prohibits review of the unique issues presented by this case, *i.e.*, whether the education article inherently mandates that if the legislature provides an education, that education must meet some minimal level of reasonableness, and whether those charged with providing that education violate the constitution when their acts or omissions deprive students of a minimally safe and adequate education.

Even though our courts have assumed only an exceedingly limited role in matters relating to public education (*Committee for Educational Rights*, 174 Ill. 2d at 24), the unique issue presented by this case does not invade the province of the legislature. Consideration of this issue by the trial court will not involve the quandary that the supreme court envisioned in *Committee for Educational Rights*: "What constitutes a 'high quality' education, and how it may best be provided, cannot be ascertained by any judicially discoverable or manageable standards." *Committee for Educational Rights*, 174 Ill. 2d at 28. On the contrary, resolution of the issue as raised by plaintiffs, whether the actions of these defendants deprive plaintiffs of a minimally safe and adequate education, is not too difficult a task for our judicial system. Questions of reasonableness are commonplace considerations which the courts are designed to decide.

We hold that plaintiffs are entitled to amend their complaint if they choose and if they have facts to allege that these defendants acted arbitrarily, unreasonably, or capriciously in their duties and obligations to these children, and we hold that the trial court abused its discretion by failing to give plaintiffs the opportunity to amend their complaint to state a cause of action under the education article of the Illinois Constitution.

## B. DUE PROCESS UNDER THE FEDERAL CONSTITUTION

■ Plaintiffs argue that although a State is not generally under a constitutional duty to provide substantive services for those within its borders, a State may not deprive individuals of their liberty ostensibly to provide a service such as education and then fail to provide that service. Plaintiffs claim that this "well-established principle applies with full force in the context of compulsory education laws." We agree with plaintiffs, but only to the extent that if

their cause of action is properly stated, plaintiffs are not precluded from bringing a cause of action against these defendants, who are State agents, for unreasonable deprivations of life, liberty, or property under the fourteenth amendment to the United States Constitution.

However, we disagree with plaintiffs' argument that education is a fundamental constitutional right.

"Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected." *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 35, 36 L. Ed. 2d 16, 44, 93 S. Ct. 1278, 1297 (1973).

In *Rodriguez*, the Court also rejected the argument that a minimum or "identifiable quantum of education" is a "fundamental right." Accord *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 458, 101 L. Ed. 2d 399, 409, 108 S. Ct. 2481, 2487-88 (1988).

Nevertheless, the Supreme Court has also held that it is "indisputable" that "the Fourteenth Amendment protects the rights of students against encroachment by public school officials." *New Jersey v. T.L.O.*, 469 U.S. 325, 334, 83 L. Ed. 2d 720, 729, 105 S. Ct. 733, 738 (1985).

" 'The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures—Boards of Education not excepted. These have, of course, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights.' " *T.L.O.*, 469 U.S. at 334, 83 L. Ed. 2d at 729-30, 105 S. Ct. at 738-39, quoting *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 637, 87 L. Ed. 1628, 1637, 63 S. Ct. 1178, 1185 (1943).

Defendants argue that based upon decisions of "the overwhelming majority of courts," we should reject plaintiffs' due process claim because compulsory education laws do not constitute such a restriction upon plaintiffs' liberty "as to give rise to an affirmative right to educational services." Defendants misapprehend the nature of plaintiffs' argument. We agree that plaintiffs do not have an affirmative right to an education under the federal due process clause, but plaintiffs' argument on this issue is not the right to an education, but the right to be free from an unreasonable deprivation of liberty.

Defendants also misconstrue the current law regarding compulsory school attendance. "[C]ompulsory attendance laws do not create an affirmative constitutional duty to protect students from the *private actions of third parties* while they attend school." (Emphasis added.) *Maldonado v. Josey*, 975 F.2d 727, 732 (10th Cir. 1992); accord *Wright*

*v. Lovin*, 32 F.3d 538 (11th Cir. 1994); *Dorothy J. v. Little Rock School District*, 7 F.3d 729 (8th Cir. 1993); *J.O. v. Alton Community Unit School District 11*, 909 F.2d 267 (7th Cir. 1990). However, neither party cites any case, and our research has not located any, which deals with the argument raised here by plaintiffs, that agents of the State, rather than private parties, have unreasonably deprived plaintiffs of their liberty by requiring them to attend schools that do not provide a minimally safe and adequate education.

Nevertheless, the fact that no case has yet to deal with this issue does not preclude plaintiffs from stating a cause of action. "*Stare decisis* is a policy of the courts to stand by precedent and leave settled points of law undisturbed." *Charles v. Seigfried*, 165 Ill. 2d 482, 492 (1995). The issue raised by plaintiffs involves an uncharted area, rather than a settled point of law. In the interest of justice, and in recognition of the rule that public officials have no right to exercise their discretion arbitrarily, unreasonably, or capriciously, we hold that plaintiffs are entitled to an opportunity to amend their complaint. We therefore affirm that part of the circuit court's ruling which dismissed the federal due process count, but we reverse the trial court's ruling that the dismissal be with prejudice, and we remand so that plaintiffs will have the opportunity to amend.

## C. DUE PROCESS UNDER THE ILLINOIS CONSTITUTION

■ The Illinois Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law." Ill. Const. 1970, art. I, § 2. The Illinois guarantee of due process stands separate and independent from the federal guarantee of due process, but the Illinois provision offers at least the same level of due process protection as that provided by the United States Constitution, and our courts are free to find that the Illinois Constitution provides greater protection than does the federal constitution. *People v. DiGuida*, 152 Ill. 2d 104, 119 (1992); *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990).

Therefore, since we remand to give plaintiffs an opportunity to amend their complaint to state a cause of action under the federal due process clause, we also find that plaintiffs are entitled to a chance to amend the count alleging a breach of the Illinois due process clause, for the same reasons we stated in the previous section of this opinion. See also *Hamer v. Board of Education of Township High School District No. 113*, 66 Ill. App. 3d 7, 11 (1978) (finding that "rights incident to a public education are property rights entitled to both substantive and procedural due process protection" and that a cause of action for a substantive deprivation of due process was stated

by allegations of arbitrary penalties imposed upon a student without a reasonable relationship to the disciplinary objectives sought to be attained). If a cause of action can be stated for a substantive deprivation of a property right to a public school education due to arbitrary disciplinary procedures, we see no reason why a cause of action cannot be stated for a substantive deprivation of a liberty right due to mandatory school attendance laws that arbitrarily require students to attend a school that does not provide a reasonable level of education.

## D. SCHOOL CODE

■ Plaintiffs claim that they have stated a legally sufficient cause of action under the School Code. Defendants claim that plaintiffs have no private cause of action against defendants under the School Code. We disagree with both parties. We affirm the court's dismissal of the section of plaintiffs' complaint which alleged violations of the School Code, but we reverse the finding that the dismissal must be with prejudice, and we remand the cause, for it is not impossible for these plaintiffs to properly state a cause of action against these defendants for violations of the School Code.

We address the availability of such a cause of action first. Where a plaintiff alleges that a school official has acted in a manner that is palpably arbitrary, unreasonable, or capricious, in violation of the School Code, then a cause of action will lie in the circuit courts for redress of that grievance. *Games v. County Board of School Trustees*, 13 Ill. 2d 78 (1958); *Tyska*, 117 Ill. App. 3d at 921-22.

In the current complaint, plaintiffs have not stated such a cause of action. Nowhere in the complaint do plaintiffs specify the actions or omissions of defendants that violate the School Code, nor do they allege specifically how defendants' actions or omissions are arbitrary, unreasonable, or capricious. We note, however, that if plaintiffs choose to amend their complaint, they must be cautious not to seek redress for matters that have been placed into the hands of the Financial Oversight Panel, which was appointed by the State Board to deal with the financial problems of District 189. To the extent that defendants or the Financial Oversight Panel are in the process of trying to remedy any of the problems about which plaintiffs complain, the court should not instruct them in how to make those decisions. Nor should the court make decisions which are at odds with those of defendants or the Financial Oversight Panel. See *Allen*, 6 Ill. App. 3d 633 (taxpayer parents found not to have standing to sue striking teachers for injunctive relief, in part because the parents' lawsuit sought objectives opposite to those being sought in a separate legal action instituted by the local board of education).

## E. COMMON LAW

■ Plaintiffs' complaint alleges that by "requiring Plaintiffs to attend unsafe public schools, Defendants have violated common law duties owed to each class member not to subject them to unreasonably dangerous and hazardous conditions." We disagree with plaintiffs that the above states a common law cause of action. Plaintiffs do not specify what duties defendants have breached, outside of their constitutional and statutory duties. Again, plaintiffs have the right to amend, but only if they have specific factual allegations to show how defendants have violated some common law duty owed to plaintiffs in addition to the constitutional and statutory duties allegedly breached, and if plaintiffs can make clear the manner in which defendants' breach of duty has injured plaintiffs. All of the cases plaintiffs cite are negligence actions in which the plaintiffs alleged that the defendant's breach of duty resulted in an existing or past injury to plaintiff. None of the cases cited by plaintiffs support their theory that they have a right to injunctive or other relief for injuries that have yet to occur. If we have misinterpreted plaintiffs' common law cause of action, then they will have an opportunity to clarify their position on remand.

We note also that plaintiffs do not seek relief separately under each count of the complaint, but they ask generally for relief that apparently applies to all of the counts of the complaint. Therefore, on remand, plaintiffs should ask for relief that is specific to each count of their amended complaint, in order to make it clear what relief plaintiffs seek under each count of the complaint. 735 ILCS 5/2—604 (West 1992).

## III. CONCLUSION

For all of the reasons stated, we affirm the trial court's dismissal of plaintiffs' complaint as to all counts, but we reverse the portion of the order making the dismissal with prejudice, and we remand in order to give plaintiffs an opportunity to amend their complaint if they choose to do so.

Affirmed in part and reversed in part; cause remanded.

KUEHN, P.J., and MAAG, J., concur.